**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROBERT FRERCK,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN WILEY & SONS, INC., and<br>JOHN DOE PRINTERS 1-10,<br><br>    Defendants. | CASE NO. 11-cv-02727<br>Hon. Robert M. Dow Jr.<br>Magistrate Judge Geraldine Soat Brown<br><br>**MEMORANDUM OF LAW IN**<br>**OPPOSITION TO PLAINTIFF'S**<br>**MOTION FOR PRELIMINARY**<br>**INJUNCTION** |

**PRELIMINARY STATEMENT**

    This memorandum is submitted on behalf of Defendant John Wiley & Sons, Inc. ("Wiley"), in opposition to Plaintiff Robert Frerck's motion for a preliminary injunction. Plaintiff, a professional photographer, claims that Wiley has exceeded an alleged use limit on various licenses entered into for the use of 94 "stock" (i.e. common) photographs. These photographs are widely licensed to Wiley and others, for fees in the range of $100 to $300.[1] Plaintiff now seeks an Order preliminarily enjoining Wiley from making use of and distributing his photographs in future printings of Wiley publications.

    Plaintiff has failed to show that he will suffer irreparable harm if the injunction request is denied. First, he only seeks to enjoin future printings of his photographs. Vague speculation

---

[1] Exhibit A to the Complaint, a spreadsheet purportedly identifying each of Plaintiff's photographs for which Wiley exceeded the license limits, is misleading. At first blush, the spreadsheet appears to identify 205 works. However, many of those photographs were alleged to have been used in multiple editions of the same publication or in multiple publications. Thus, the actual number of photographs that have been allegedly overused is only 94. (See Docket No. 1-1).

1

about future infringements hardly constitutes "imminent" harm warranting an immediate injunction. Second, any damages Plaintiff actually suffers are readily ascertainable and compensated with a monetary award.[2] Even assuming Plaintiff could show irreparable harm (which he cannot), Wiley would endure a far greater hardship if future sales of any books currently in print were prevented. Wiley's relationship with its customers – educational institutions, professors and students – would be permanently damaged. The harm Wiley will suffer far exceeds the easily quantifiable damages allegedly arising out of Wiley's publishing activities.

## BACKGROUND

This case is one of several brought by Plaintiffs' contingency fee counsel against Wiley for the purported overuse of licensed photographs. In this case, Plaintiff asserts Wiley exceeded the license limits for 94 different photographs, consisting largely of stock photographs of cities and landscapes and photographs of individuals in "everyday" situations. The photographs are published in multiple editions of Spanish language textbooks, engineering textbooks, and Frommer's travel guides, among others, and constitute only a minor percentage of any individual publication (in some cases, just a single photograph taking up less than a quarter or half of a single page of the entire textbook but in no case more than 21 quarter page photographs in a 600 page textbook). The photographs were normally licensed by Plaintiff for $100-300 to Wiley (See Complaint, Doc. No. 1, Exs. B-E). The majority of the books in which Plaintiff's photographs were used are no longer in print and are unavailable for purchase from Wiley.

The Court should be aware that identical preliminary injunction motions have been brought – and rejected – in other similar cases brought by the same counsel on behalf of other

---

[2] Plaintiff cannot, as a matter of law, rely on the criminal copyright provision in 17 U.S.C. § 506 to support a motion for a preliminary injunction.

photographers. As recently as April 28th of this year, the District Court in Arizona rejected a preliminary injunction request made by counsel in a case brought by Tom Bean, also a professional photographer, against Wiley. *Bean v. John Wiley & Sons, Inc.*, Case No. 11-08028 (D. Ariz. Apr. 28, 2011).[3] In a virtually identical declaration as the one submitted here by Plaintiff, Bean alleged that he granted limited permission to Wiley for the use of his photographs, that he believed Wiley exceeded those limitations, and that he

> can collect damages only for infringements that have already occurred at the time of trial; infringements after trial will require [him] to file another case. The cost of litigating additional, post-trial copyright infringements of works not eligible for statutory damages is prohibitive. [He] is harmed by being put in a position of having to file multiple, successive court cases for distributions of the same infringing publications because Wiley will not voluntarily stop its infringing practices.

(*See Bean*, Docket No. 3-2 ¶¶6-9, 12). Plaintiff here alleges a word-for-word identical injury he anticipates will result if an injunction is not granted. (*See* Frerck Decl. ¶11). The District Court in Arizona was not persuaded by this argument, holding that "there [was] nothing imminent or urgent here. Plaintiff complains only of having to file future actions." (*See* Exh. 1, hereto). This Court should also not be persuaded. *See also Bean v. Pearson Educ., Inc.*, No. CV 11-8030-PCT-PGR, 2011 U.S. Dist. LEXIS 38360 (D. Ariz. Mar. 30, 2011)(denying Bean's request for a preliminary injunction without a hearing because he failed to show irreparable harm).

Candor, at this point, is entirely appropriate. Plaintiff's counsel brings exactly the same motion for a preliminary injunction based on nearly identical papers for one purpose only: to increase the "nuisance" (and settlement) value of his cases. To date, to Wiley's knowledge, Plaintiff's counsel has not been granted a single preliminary injunction in any stock photographs case. He is not entitled to such a "windfall" here, either.

---

[3] A copy of the *Bean v. John Wiley & Sons* decision is attached hereto as Exhibit 1.

# ARGUMENT

## I. STANDARD FOR GRANTING INJUNCTIVE RELIEF

To show entitlement to a preliminary injunction, Plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24-25, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249, 261 (2008). As Plaintiff states, this Circuit views this test as a "sliding scale" weighing the relative likelihood of success against the harm if the requested relief is not granted. However, the very case upon which Plaintiff relies also makes clear that "[i]t is not enough for the plaintiffs to show a likelihood of success on the merits. Critically, they must also show why they will suffer irreparable harm if the preliminary injunction they want does not issue." *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)(affirming denial of injunction where plaintiff failed to show irreparable harm), *citing Winter*, 129 S. Ct. at 375-76. "A preliminary injunction cannot issue [unless Plaintiff] establishes both of the first two factors." *Viskase Cos. v. World PAC Int'l USA*, 731 F. Supp. 2d 764, 768 (N.D. Ill. 2010), *citing Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994)("Because, irrespective of relative or public harms, a movant must establish both a likelihood of success on the merits *and* irreparable harm . . . the district court may deny a preliminary injunction based on the movant's failure to establish either of these two crucial factors without making additional findings respecting the other factors")(emphasis in original).

## II. PLAINTIFF HAS NOT DEMONSTRATED IRREPARABLE HARM

A party seeking a preliminary injunction must show that the irreparable harm is real, imminent and significant – not merely speculative or potential – with admissible evidence. *Winter*, 129 S. Ct. at 374; *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 536 F.2d 730, 736 (7th Cir. 1976)("One prerequisite for injunctive relief is, of course, irreparable injury, and that injury must be more than speculative"). "A potential injury is irreparable when 'the threatened harm would impair the court's ability to grant an effective remedy.' Thus, potential harm is generally not 'irreparable' if the party seeking an injunction has an adequate alternative remedy in the form of money damages or other relief." *EnVerve, Inc. v. Unger Meat Co.*, No. 11 C 472, 2011 U.S. Dist. LEXIS 45208, at *8-9 (N.D. Ill. Apr. 26, 2011), *citing* 11A Wright, Miller, Kane & Marcus, Federal Practice & Procedure § 2948.1 (2d ed.)

Simply identifying an irreparable harm is insufficient. The alleged harm must also be immediate or imminent to warrant an injunction. *Cervantes v. Perryman*, 954 F. Supp. 1257, 1262 (N.D. Ill. 1997)("There must be a clear and present need for the injunctive relief to prevent some irreparable harm"). *See also Monsanto Co. v. Geertson Seed Farms*, __ U.S. __, 130 S. Ct. 2743, 2748, 177 L. Ed. 2d 461 (2010)(denying a permanent injunction where the moving party could not show it was "needed to guard against any present or imminent risk of likely irreparable harm"); *White v. Florida*, 458 U.S. 1301, 1302, 103 S. Ct. 1, 1, 73 L. Ed. 2d 1385, 1386 (1982) ("Although White's application establishes that he may suffer irreparable harm at some point in the future, there is no indication that the harm is imminent").

**A.** **Plaintiff has not demonstrated irreparable harm.**

Plaintiff has not submitted any evidence that he is in danger of actually suffering an irreparable injury. The only harm Plaintiff asserts is that he

> can collect damages only for infringements that have already occurred at the time of trial; infringements after trial will require

5

> [him] to file another case. The cost of litigating additional, post-trial copyright infringements of works not eligible for statutory damages is prohibitive. [He] is harmed by being put in a position of having to file multiple, successive court cases for distributions of the same infringing publications because Wiley will not voluntarily stop its infringing practices.

(*See* Frerck Decl. ¶11). This is completely irrelevant as Plaintiff's motion is for a preliminary injunction, not permanent injunctive relief. Preliminary injunctions should not be used "simply to eliminate a possibility of a remote future injury, or a future invasion of rights . . . ." *The Cont'l Grp., Inc. v. Amoco Chems., Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) citing *Holiday Inns of Am., Inc., v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1214-15 (C.D. Cal. 2007) ("Irreparable harm cannot be established solely on the fact of past infringement [and] the mere likelihood of future infringement by a defendant does not by itself allow for an inference of irreparable harm").

Indeed, the concern for future infringement and the cost of pursuing future claims is the very "harm" rejected by the District Court in Arizona in the *Bean* cases. (*See* Ex. 1 and *Bean v. Pearson Educ., Inc.*, 2011 U.S. Dist. LEXIS 38360, *supra*). Notably, Plaintiff does not "contend that [his] losses cannot be quantified, that the market for [his] product has been damaged, or that [his] 'brand, business reputation, and goodwill . . . would be irreparably harmed,' simply because their photographs appear in Defendant's textbooks in unauthorized quantities." *Bean v. Pearson Educ., Inc.*, 2011 WL 1211684, at *8, *citing Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 948–49 (N.D. Cal. 2009).

Plaintiff's claim centers on the loss of money – the fee for each use of his photographs under the terms of the license. None of these photos are <u>exclusively</u> licensed. These are monetary damages capable of ascertainment and award if Plaintiff prevails on summary judgment or at the time of trial. The damages will be calculated by simply determining the

6

license fee that should have been charged for any use by Wiley in excess of the license terms. Such an award will fully compensate Plaintiff for any losses. *See SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1276 (11th Cir. 2001)(vacating a preliminary injunction prohibiting the sale of a derivative novel based on the "Gone With The Wind" franchise because the owners could be compensated with money damages for distribution of any unauthorized derivatives); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988)(holding monetary award was adequate to compensate owner of a copyrighted story for infringement in the making of a movie based, in part, on the story), *aff'd sub nom. Stewart v. Abend*, 495 U.S. 207, 110 S. Ct. 1750, 109 L. Ed. 2d 184 (1990); *Grokster*, 518 F. Supp. 2d at 1214-15 ("As to the latter, future copyright infringement can always be redressed via damages, whether actual or statutory"). Indeed, Plaintiff is only seeking money damages for any potentially infringing uses of his photographs to date and until the date of any reprintings. (Doc. No. 12 at p. 11) ("Frerck is not seeking retrieval of textbooks from schools. Instead he simply asks for an order enjoining future printings and distribution of his infringed Photographs").

The string of authorities upon which Plaintiff relies to support his claim of irreparable harm either support Wiley's opposition or are inapposite altogether. Plaintiff asserts that *Apple* holds that "proof of such harm stemming from infringement – such as harm to business reputation and market share – should not be difficult to establish." (Doc. No. 12 at p. 6). Wiley does not dispute this assertion, but it does little to further Plaintiff's argument. Plaintiff is <u>not</u> asserting a loss of business reputation or market share as the basis for the injunction. Plaintiff claims that the harm is in the cost of future litigations to continue to protect his copyright. As noted above, these costs are readily ascertainable and not the basis for an injunction.

Plaintiff next relies on the recent decision of the District Court for the Southern District of New York in *WPIX, Inc. v. ivi, Inc.*, No. 10 Civ. 7415 (NRB), 2011 U.S. Dist. LEXIS 17654 (S.D.N.Y. Feb. 22, 2011), for the broad proposition that copyright plaintiffs can have a difficult time in proving specific harms. (Doc. No. 12 at 6). *WPIX* is a drastically different case than presented here. There, the copyright owner of television programming sought to enjoin the defendant from capturing over-the-air broadcasts of the programming and then, without consent, streaming those broadcast signals over the Internet to subscribers. In granting a preliminary injunction, the Court recognized the difficulty in quantifying the value of WPIX's lost sales and revenues as a result of ivi's rebroadcasting of the copyrighted programming. Here, the calculation of Plaintiff's damages is a straightforward formula based on the licensed per use fee and the number of uses that exceeded the license limit. The complexity of the infringement in *WPIX* hardly compares to the simplicity of the calculation of damages (if any) here.

Lastly, Plaintiff relies on *Mortgage Market Guide, LLC v. Freedman Report, LLC*, No. 06-cv-140-FLN, 2008 U.S. Dist. LEXIS 56871 (D.N.J. July 28, 2008), and *Designer Skin, LLC v. S&L Vitamins, Inc.*, No. CV 05-3699-PHX-JAT, 2008 U.S. Dist. LEXIS 68467 (D. Ariz. Sept. 5, 2008)(Teilborg, J.), for the proposition that the only way to prevent a future infringement is by the issuance of an injunction. (Doc. No. 12 at 6-7). Neither involved a preliminary injunction. *Mortgage Market Guide* and *Designer Skin* are both are post-trial awards of permanent injunctions. Those cases were in a substantially different procedural posture from the present case and do nothing to inform the Court's analysis of whether a preliminary injunction is warranted. More on point, only one year after deciding *Designer Skin*, Judge Teilborg issued a decision denying a motion for a preliminary injunction in *Gowan Co., LLC v. Aceto Agricultural Chemicals*, finding that a history of infringement coupled with a threat of future infringements

was not adequate grounds for issuing a preliminary injunction. No. CV- 09-1124-PHX-JAT, 2009 U.S. Dist. LEXIS 63633 (D. Ariz. July 10, 2009). Judge Teilborg denied the request for a preliminary injunction because the plaintiff, like Plaintiff Frerck, had not submitted evidence of any harm to its competitive position – or the threat of loss of prospective customers, goodwill or reputation – resulting from defendant's use of plaintiff's copyrighted labels on defendant's products. Id.

**B.     Plaintiff has not demonstrated that the irreparable harm is imminent.**

In addition to being irreparable, the harm Plaintiff claims must be imminent. Thus, a significant delay in pursuing an injunction is relevant in determining whether injunctive relief is necessary. *See Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979) ("delay is only one among several factors to be considered"); *Johnson Publ'g Co., Inc. v. Willitts Designs Int'l, Inc.*, No. 98 C 2653, 1998 U.S. Dist. LEXIS 9264 (N.D. Ill. June 22, 1998)(four month delay before filing a motion for preliminary injunction a factor in denying preliminary injunction request); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, No. 86 C 6159, 1987 U.S. Dist. LEXIS 781, at *7 (N.D. Ill. Jan. 30, 1987)(three month delay before filing suit "is too short of a time for the equitable doctrine of laches to apply, [but] the fact that [plaintiff] waited three months indicates a lack of a need for the extraordinary remedy of a preliminary injunction"); *Borden, Inc. v. Kraft, Inc.*, No. 84 C 5295, 1984 U.S. Dist. LEXIS 23179 (N.D. Ill. Sept. 28, 1984)(five month delay in pursuing legal action weighs against granting an injunction).

Here, Plaintiff seeks an injunction with respect to books that were first published in 1993 – 18 years before this action was commenced. Plaintiff alleges that "[u]pon information and belief, Wiley habitually disregarded the license limits and made widespread unauthorized uses of the Photographs." (Doc. No. 12 at 2). Plaintiff also alleges that, as of July 2010, <u>he was aware</u>

<u>from the testimony of a Wiley employee that there were inadvertent unauthorized uses of visual art in Wiley publications.</u> (*Id.*) Yet, despite this knowledge, Plaintiff did nothing prior to contacting Wiley's counsel and filing this action in April 2011 to seek redress from Wiley. The delay in commencing this action and in seeking injunctive relief belies Plaintiff's claim that the harm is imminent and irreparable.

**C.    Plaintiff's reliance on the criminal copyright statute is misplaced.**

Plaintiff argues that Wiley's continued use of his works constitutes "criminal infringement" and that "the ongoing victimization by a felony crime" constitutes irreparable harm. (Doc. No. 12 at 8-9). Significantly, Plaintiff provides no authority where a Court has applied the criminal copyright statute in this way. Indeed, Plaintiff could not provide such authority because no such authority exists.

To the contrary, it is established that the criminal penalties found in 17 U.S.C. § 506 cannot be the basis for a private cause of action. In *Donald Frederick Evans & Associates, Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 912 (11th Cir. 1986), the Eleventh Circuit held that the District Court correctly determined that there was no private cause of action under 17 U.S.C. § 506 and affirmed denial of plaintiff's request for a preliminary injunction because he could not assert violation of the criminal copyright statute as a basis for his claim of irreparable harm. *See also Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 39 (S.D.N.Y. 1992) ("there is no private cause of action under the criminal provisions of the copyright law"), *aff'd Kelly v. L.L. Cool J*, 23 F.3d 398 (2d Cir. 1994); *Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 U.S. Dist. LEXIS 14174, at *45 (N.D. Ill. July 23, 2004)(acknowledging that section 506 does not permit private plaintiffs redress for copyright violations because "private parties have adequate means available by which to seek relief under other provisions of the Act which will yield more

10

appropriate relief"), *citing Donald Frederick Evans*, 785 F.2d at 913. Plaintiff, similarly, cannot rely on the criminal copyright statute as a basis to show irreparable harm.

## III. BALANCING THE EQUITIES FAVORS WILEY

The majority of the textbooks and publications of which Plaintiff seeks to enjoin the future sales are out-of-print and will not be reprinted by Wiley. (Kruger Decl. ¶¶4-17; Suarez Decl. ¶¶4-5). However, the following texts identified in Exhibit A of Plaintiff's Complaint are still in print: *Vision y Voz: A Complete Spanish Course* (3d ed.), *Dicho Y Hecho* (7th ed.), *Nuevos Mundos* (2d ed.), *La Lengua Que Heredames* (5th ed.), *La Lengua Que Heredames* (6th ed.), *Horizontes: Repasos y Conversacion* (5th ed.), *Nuevos Horizontes* (1st ed.), *Environmental Science: Earth as a Living Planet* (6th ed.) (electronic book only), *Environmental Science: Earth as a Living Planet* (7th ed.), *Essential Environmental Science* (1st ed.), *Con Brio! Beginning Spanish* (1st ed.), *Dicho Y Hecho* (8th ed.), *Environmental Science* (7th ed.), *Dicho Y Hecho* (9th ed.) and *Engineering Mechanics Statics* (5th Ed.). (Suarez Decl. ¶6).

Requiring Wiley to halt all printings of these textbooks could be highly disruptive to Wiley's relationships with the universities and colleges which have already adopted them for use in classes. (Weiner Decl. ¶4). If the adopted textbooks become unavailable for purchase on short notice from Wiley, schools and courses which have adopted the textbooks would have to revise their curricula, which are built around the adopted textbooks, and identify new textbooks on which to base their curricula. (Weiner Decl. ¶¶7-8). This would cause ill will between Wiley and its educational customers and result in an incalculable loss of revenues if the customers choose to replace the Wiley textbooks with textbooks published by another company. (Weiner Decl. ¶¶12-13). Wiley would most likely not be able to recover the business lost from these

schools and Wiley's reputation as a reliable provider of high quality educational materials would be damaged. (*Id.*)

In contrast, the "hardship" the Plaintiff will suffer if the injunction is not granted is slight. Wiley's continued use of the stock photographs does not impair Plaintiff's ability to continue to take or license photographs or impair his reputation as a photographer or licensor of photographs. Wiley has adequate incentives, and plans, to replace all photographs for which it has exceeded license restrictions in reprintings of books going forward.[4] (See Suarez Decl. ¶7). In this context, where the alleged infringed images constitute a small portion of the overall publications at issue, the extraordinary relief of a preliminary injunction is particularly inappropriate. *See Dun v. Lumbermen's Credit Assoc.*, 209 U.S. 20, 22, 28 S. Ct. 335, 336, 52 L. Ed. 663 (1908).

## IV. THE PRELIMINARY INJUNCTION MOTION CAN BE DECIDED WITHOUT A HEARING

An injunction can be entered or denied without a hearing if the Court determines there are no relevant facts in dispute. *Spartacus Youth League v. Bd. of Trustees of Ill. Indus. Univ.*, 502 F. Supp. 789, 805 (N.D. Ill. 1980), *citing* 11 Wright & Miller, Federal Practice and Procedure, § 2949 at 478 (1973). Furthermore, "a district court is not obliged to hold a hearing when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3d Cir. 1990). Indeed, in the *Bean* case, *supra*, a factually similar case brought by Plaintiff's counsel, the Court denied a motion for a preliminary injunction without holding a hearing.

Here, based on the allegations in support of the motion, Plaintiff has simply not suffered any irreparable harm as a result of Wiley's alleged conduct. Plaintiff cannot credibly dispute that

---

[4] Indeed, Wiley has adequate incentives not to wish to use Frerck photographs going forward at all, given his ready predisposition to sue "on information and belief."

the hardship Wiley and its customers will suffer from a restraint on the continued distribution of its already printed textbooks far outweighs any injury Plaintiff may suffer (which is compensable with monetary damages in any event). Accordingly, Plaintiff's motion should be denied without a hearing. For the same reasons, Plaintiff's request for expedited discovery in connection with his preliminary injunction motion should be denied.

### V. PLAINTIFF IS REQUIRED TO FILE A BOND IF A PRELIMINARY INJUNCTION IS ORDERED

Plaintiff asserts that if this Court issues an injunction, no bond is required. Rule 65(c) of the Federal Rules of Civil Procedure provides that "no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." A District Court Judge has the discretion to waive posting of a bond only where there is no evidence that the enjoined party will suffer any damages as the result of an injunction. However, Wiley has submitted evidence that it will suffer potential lost revenues and sales of $3,000,000 in just one year if it is required to stop printing these titles on short notice and without being able to control the process of replacing the photographs. (Weiner Decl., ¶13). A bond in the amount of $3,000,000 should be required.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be denied.

Dated: June 7, 2011
Hoboken, New Jersey

                                              Respectfully submitted,

By:   /s/ Ashima Aggarwal
       Ashima Aggarwal
       aaggarwa@wiley.com
       Joseph J. Barker
       jobarker@wiley.com
       John Wiley & Sons, Inc.
       111 River Street
       Hoboken, New Jersey 07030
       (T): (201) 748-7862
       (F): (201) 748-6500

       William McGrath
       wmcgrath@davismcgrath.com
       Davis McGrath LLC
       125 South Wacker Drive
       Chicago, Illinois 60606
       (T): (312) 332-3033
       (F): (312) 332-6376

       *Attorneys for John Wiley & Sons, Inc.*

## **CERTIFICATE OF SERVICE**

I, William T. McGrath, an attorney, certify that I electronically filed the foregoing with the Clerk of the Court using the ECF System, which sent notification to all parties of record on the 7th day of June, 2011.

Dated: June 7, 2011                                           By:   /s/William T. McGrath

# EXHIBIT 1

Bean v. John Wiley & Sons, Inc.
Order dated April 28, 2011

|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | IN THE UNITED STATES DISTRICT COURT | |
| 7 | FOR THE DISTRICT OF ARIZONA | |
| 8 | | |

```
                                   )
 9   Tom Bean,                     )    No. CV 11-8028-PCT-FJM
                                   )
10              Plaintiff,         )    ORDER
                                   )
11   vs.                           )
                                   )
12                                 )
     John Wiley & Sons Inc.,       )
13                                 )
                Defendant.         )
14                                 )
                                   )
15
```

      The court has before it the parties' Joint Report of Rule 26(f) conference and request for a scheduling conference. (Doc. 27). However, the Report is not in the format required by our standard order setting a Rule 16 conference. The clerk is directed to issue our standard order requiring the parties to re-submit their proposed case management plan in accordance with our order, and to set this case for a Rule 16 Scheduling Conference.

      We note that the parties are willing to participate in a settlement conference. Report at 5. The clerk shall enter an order referring this case to the Ninth Circuit mediators for evaluation for possible participation in a June mediation.

      The court has before it plaintiff's motion for preliminary injunction (doc. 3), defendant's response, plaintiff's motion for hearing (doc. 21), and defendant's response. There is nothing imminent or urgent here. Plaintiff complains only of having to file future actions. Declaration of Tom Bean at 5, ¶12. But that would be remedied by permanent injunctive relief, not a preliminary injunction. It is premature to hold a full blown evidentiary

1 hearing on plaintiff's motion for preliminary injunctive relief until after the court has held its
2 Rule 16 conference. Accordingly, it is ORDERED DENYING plaintiff's motion for hearing
3 (doc. 21). Instead, if one is still thought to be desirable, we shall schedule one at the Rule
4 16 conference. Meanwhile, the case may be mooted by the parties' June mediation.

DATED this 28th day of April, 2011.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge