# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ROBERT FRERCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11-cv-2727 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| JOHN WILEY & SONS, INC. and JOHN | ) | |
| DOE PRINTERS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Robert Frerck's motion for a preliminary injunction [11] and Defendant John Wiley and Son's partial motion to dismiss [20]. Plaintiff seeks an injunction to prevent Wiley from future infringements of his copyrighted products. Defendant Wiley seeks dismissal of Plaintiff's fraud count. For the reasons set forth below, the Court denies Plaintiff's motion for a preliminary injunction [11] and denies Defendant's partial motion to dismiss [20].[1]

## I.      Background

Plaintiff Robert Frerck is a professional photographer who resides in Chicago, Illinois. Odyssey Productions, Inc. acts as licensing agent for Frerck's photographs. Defendant John Wiley and Sons, Inc. is a textbook publisher, located in Hoboken, New Jersey. Between approximately 1992 and 2010, Plaintiff sold Defendant limited licenses to use a number of Plaintiff's photographs in Defendant's publications. Plaintiff maintains that Odyssey expressly defined the number of permissible copies, image size, distribution area, form of media, and

---

[1]    The parties have been engaged in efforts to settle this case with the assistance of Magistrate Judge Brown, which culminated in a settlement conference held on February 2, 2012. Those efforts have not yet led to agreement. Magistrate Brown also has been supervising the ongoing discovery process in this case.

duration for each publication. Plaintiff alleges that Wiley's use of Plaintiff's photographs exceeded the use permitted by the terms of the licenses, or in some cases, used photographs without first seeking permission. Plaintiff asserts claims against Defendant Wiley for fraud and copyright infringement in violation of 17 U.S.C. § 501, *et seq.*

## II.    Preliminary Injunction

Like all forms of injunctive relief, a preliminary injunction is "an extraordinary remedy that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original); see also *Goodman v. Ill. Dep't of Financial & Professional Reg.*, 430 F.3d 432, 437 (7th Cir. 2005) (same). A party seeking a preliminary injunction must demonstrate as a threshold matter that (1) its case has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the moving party meets its initial burden, then the court must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). The court also considers the public interest served by granting or denying the relief, including the effects of the relief on non-parties. *Id.*

The Copyright Act provides that courts may grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The Supreme Court has made clear that an injunction does not automatically follow a determination that a copyright has been infringed. See *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006) ("Like the Patent Act, the Copyright Act provides that courts 'may'

grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright' * * * * And as in our decision today, this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed.") (internal citation omitted); see also *Salinger v. Colting*, 607 F.3d 68, 80 (2d. Cir. 2010) (noting that "the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury'") (quoting *MercExchange*, 547 U.S. at 391). The Court also cautioned district courts against presuming that money damages always will be appropriate. *MercExchange*, 547 U.S. at 393-94 (criticizing district court's categorical rule that a plaintiff's willingness to license its patents "would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue").

A.      **Likelihood of Success on the Merits**

A party seeking a preliminary injunction must demonstrate "that it has a 'better than negligible' chance of success on the merits of at least one of its claims." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1096 (7th Cir. 2008). This is an "admittedly low requirement." *Id.* However, if a plaintiff fails to demonstrate any likelihood of success on the merits, the motion for preliminary injunction must be denied. See, *e.g., Cox v. City of Chicago,* 868 F.2d 217, 223 (7th Cir. 1989).

To establish copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) the infringer's unauthorized copying of protected elements of the copyrighted material. *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Plaintiff has

submitted evidence that he owns the copyrights to the photographs that he licensed to Wiley. He also has presented evidence that he licensed only a limited right to copy the photographs, or did not license them at all. Finally, Plaintiff has presented evidence that Defendant printed some of his photographs without any license and maintains that Defendant printed beyond specified limits in other licenses. See *Wood v. Houghton Mifflin Harcourt Pub. Co.*, 589 F. Supp. 2d 1230, 1238-42 (D. Colo. 2008) ("Wood has also produced probative evidence that HMH exceeded the scope of the licenses issued for [four textbooks, by introducing HMH's admissions and inventory records demonstrating print quantities in excess of the licensed quantities] * * * * Therefore, for these four publications, Wood has met his burden of establishing that HMH exceeded the scope of its license and thus violated his copyright."). Based on the foregoing, Plaintiff has a significant chance of success on the merits. See *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 617 (S.D.N.Y. 2011) (finding that the plaintiffs "easily" met their burden of likelihood of success on the merits where plaintiffs demonstrated that they owned valid copyrights and that defendant was using their works without their consent and in the absence of any statutory exception").

## B. Irreparable Harm/Absence of Adequate Remedy at Law

Plaintiff contends that Defendant's unauthorized use of his copyrighted works has "forced" him to "grant" licenses to Defendant, "having been stripped by Wiley of the ability to control his copyrighted works." According to Plaintiff, Defendant's ongoing infringement constitutes irreparable harm that cannot be redressed through monetary damages. Defendant, noting that Plaintiff is in the business of licensing his photographs and that the fees for licenses are based on specific parameters, counters that any harm to Plaintiff is purely monetary and can be adequately remedied with money damages.

The Court agrees that the harm suffered by Plaintiff can be adequately remedied with money damages. Nothing that Plaintiff has presented indicates that money damages would be insufficient and, indeed, the evidence suggests that Plaintiff primarily wants to be compensated with money—both in the form of actual damages and attorneys' fees and costs—for the unauthorized use of his photographs. Moreover, the cases cited by Plaintiff do not support his position that monetary damages will be an insufficient remedy. In *Apple Inc. v. Pystar Corp.,* 673 F. Supp. 2d 943, 948–49 (N.D. Cal. 2009), the court issued a permanent injunction upon finding that the plaintiff would suffer irreparable harm and that legal remedies were inadequate. The defendant infringed on Apple's copyright by reproducing, modifying, and distributing Apple's Operating System (OS) for use on non-Apple computers. The court found that the decreased functionality and quality of the defendant's installation of Apple's OS would damage Apple's reputation, goodwill, competitive position, and market share. *Id.* at 948–49 (also citing damage to plaintiff's "investment in and commitment to high standards of quality control and customer service"). The court determined that these harms would be "difficult, if not impossible, to quantify." *Id.* at 950.

Similarly, in *Microsoft Corp. v. Marturano,* 2009 WL 1530040, at *8 (E.D. Cal. May 27, 2009), a permanent injunction was issued to enjoin the illegal distribution of counterfeit software. The court found the defendant's actions caused irreparable injury in the form of "confusion, mistake or deception as to the product's source, origin or authenticity." *Id.* Also, in *Designer Skin, LLC, v. S & L Vitamins, Inc.,* 2008 WL 4174882 (D. Ariz. Sept. 5, 2008), the defendant impermissibly copied and posted on its website 42 of the plaintiff's copyrighted images. After a bench trial, the court granted a permanent injunction. The court found that the defendant's infringement resulted in irreparable harm and that there was no adequate remedy at

law, because of the difficulty of proving damages where "the product license * * * has no market." *Id.* at *5.

In contrast to those cases, Plaintiff does not contend that his losses cannot be quantified, that the market for his product has been damaged, or that his "brand, business reputation, and goodwill * * * would be irreparably harmed" simply because his photographs appear in Defendant's textbooks in unauthorized quantities. Compare *Apple,* 673 F. Supp. 2d at 948–49. Likewise, Plaintiff's allegation that he will be subjected to future copyright infringement by Defendant does not support a claim of irreparable harm. "[T]he mere likelihood of future infringement by a defendant does not by itself allow for an inference of irreparable harm" because "future copyright infringement can always be redressed via damages, whether actual or statutory." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,* 518 F. Supp. 2d 1197, 1215 (C.D. Cal. 2007).[2] It is Plaintiff's burden to explain how future infringements would result in the type of harm—loss of market share, competitive disadvantage, or intangible harm such as a loss of goodwill or damage to their reputation—that cannot be fully redressed by monetary damages, and he has failed to do so. See also *Bean v. Pearson Educ., Inc.*, 2011 WL 1211684, at *2-4 (D. Ariz. Mar. 30, 2011). In short, Plaintiff's claim centers on the loss of money—the fee for each use of his photographs under the terms of the license and any costs and fees he would be entitled to should he prevail in this lawsuit.

Plaintiff's best argument, or certainly the one that resonates most with the Court, is that that "unreimbursed attorneys' fees and costs make the 'continuous litigation' model a money-losing proposition." As Plaintiff points out, he "is in the business of creating and licensing photographs, not investigating and suing Wiley for copyright infringement." But this argument

---

[2] Defendant has represented to the Court that the "majority of the books in which Plaintiff's photographs were used are no longer in print and are unavailable for purchase from Wiley."

does not compel injunctive relief in the present circumstances because, fortunately for Plaintiff, "[t]he Copyright Act provides the owner of a copyright with a potent arsenal of remedies against an infringer of his work, including * * * a recovery of his actual damages and any additional profits realized by the infringer or a recovery of statutory damages and attorneys' fees." *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 433-34 (1984); see also 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."); *Bonner v. Dawson,* 404 F.3d 290, 294 (4th Cir. 2005) ("[O]nce liability has been shown, § 504(b) creates an initial presumption that the infringer's profits attributable to the infringement are equal to its gross revenue.").

Because Plaintiff has failed to demonstrate the absence of an adequate remedy at law as well as irreparable harm, he is not entitled to a preliminary injunction.  However, if he is able to prove infringement, he will be in a strong position to request not only actual damages, but also additional profits realized by Defendant, statutory damages, attorneys' fees, and/or pre- and post-judgment interest.  Specifically, with respect to the issue of attorneys' fees, the Copyright Act grants courts discretion to award reasonable attorneys' fees and costs to prevailing parties in civil copyright actions.  See 17 U.S.C.A. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party * * * * Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the

prevailing party as part of the costs."). In determining whether to exercise that discretion and award costs and fees, the Court may look to a number of nonexclusive factors identified by the Supreme Court: (1) the objective unreasonableness of the action; (2) the losing party's motivations for filing or contesting the action; (3) the frivolousness of the action; and (4) the need to "advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 535 n. 19 (1994) (quoting *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 156 (3rd Cir. 1986) (internal quotations omitted)). According to the Seventh Circuit, the "two most important [of these] considerations * * * are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." *Assessment Techs. of Wisconsin, LLC v. Wire Data, Inc.,* 361 F.3d 434, 436 (7th Cir. 2004); see also *Brownmark Films LLC v. Comedy Partners*, 2011 WL 6002961, at *5-6 (E.D. Wis. 2011). If Plaintiff's allegations—including allegations that Defendant has repeatedly and continuously infringed Plaintiff's copyrighted works (and continues to do so even now) and has failed to establish a system to monitor its uses of licensed photographs—prove to be true, the Court will have little sympathy for the position taken by Defendant in this lawsuit. As Defendant points out, "the calculation of Plaintiff's damages is a straightforward formula based on the licensed per use fee and the number of uses that exceeded the license limit." Def.'s Resp. to Pl.'s Mot. at 8. Should Plaintiff prevail after being forced to proceed through lengthy litigation, evidence of conduct by Defendant that delayed resolution of a "straightforward" claim of copyright infringement would make for a similarly straightforward assessment of any fees and costs

**III.** **Motion to Dismiss**

    **A.** **Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 569 n. 14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 546. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations, quotation marks, and brackets omitted). The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

Where a complaint sounds in fraud, the allegations of fraud must satisfy the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b); see also *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) of the Federal Rules of Civil

Procedure creates exceptions to the federal regime of notice pleading and specifies that, for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The rule is designed "to force a plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). To that end, the "circumstances" of fraud that a plaintiff must include in her complaint are "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Svcs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1075 (7th Cir. 1997)); *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 523-24 (7th Cir. 1993); see also *Borsellino,* 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990) (noting that the complaint must allege the "the who, what, when, where, and how: the first paragraph of a newspaper story."). "Read together, Rule 9(b) and Rule 8 require that the complaint include the time, place and contents of the alleged fraud, but the complainant need not plead evidence." *Amakua Development LLC v. Warner*, 411 F. Supp. 2d 941, 947 (N.D. Ill. 2006) (citing *Nissan Motor Acceptance Corp. v. Schaumburg Nissan, Inc.*, 1993 WL 360426, at *3 (N.D. Ill. Sept. 15, 1993)). A fraud claim cannot be based on "information and belief" unless the plaintiff "states the grounds for his suspicions." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992).

### B.    Plaintiff's Fraud Allegations

Under Illinois law, a claim for fraud must include allegations of: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that

the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). Here, the basis for Plaintiff's fraud claim is that, at the time Wiley represented to Frerck that it needed specific, limited permission to use his photographs, Wiley knew that its actual use under the licenses would exceed the permission requested, and that Wiley did this on a continuous basis. Plaintiff attaches several of Defendant's "request letters" to his complaint as "examples" of Defendant's fraud.

Plaintiff's complaint states that Defendant falsely represented its intention to abide by the print limitations set forth in Wiley's request letters.[3] Defendant argues that Plaintiff's allegations are insufficient because he has failed to identify specific statements that are "misrepresentations." In response, Plaintiff maintains that the request letters attached to the complaint set forth "the identity of the persons making the misrepresentations, the time, place and content of the misrepresentations, and the method by which the misrepresentations were communicated to Frerck." Compl. at ¶ 10. And indeed, the request letters, sent in each instance by representatives of Wiley to Odyssey on behalf of Plaintiff, contain information about the photographs requested and the print runs for the publications, or in some cases, estimated print runs. Furthermore, the complaint alleges that Plaintiff relied on the specific representations in the request letters when granting the limited licenses and figuring out the license fees. The alleged misrepresentations set forth in Exhibits B through E, if accompanied by the requisite

---

[3]    In his complaint, Plaintiff states that the attached exhibits are only "examples" of Wiley's fraudulent conduct. However, in his response brief, Plaintiff cabins his fraud claim to the statements contained in the request letters attached to Plaintiff's complaint as Exhibits B through E. Thus, going forward, only the instances referenced in Exhibits B through E may serve as the basis for Plaintiff's fraud claim.

intent, are sufficiently detailed to satisfy Rule 9(b). [4] Each letter provides the time, place, and content of the misrepresentation, and the identity of the parties to the misrepresentation. "Reading these letters in the light most favorable to [plaintiff], these statements could be construed as representations that [Defendant] would not exceed the licenses by printing more than" the stated number of copies. *Wood v. Houghton Mifflin Harcourt Pub. Co.,* 569 F. Supp. 2d 1135, 1140 (D. Colo. 2008).

The difficulty lies here in discerning (i) whether it is enough for Plaintiff to plead, on information and belief, that Defendant intended to defraud Plaintiff at the time that the request letters were sent, without providing the Court with specific factual allegations that support an inference that Defendant possessed the requisite intent, and (ii) whether Defendant's conduct amounts to fraud or merely a broken promise. With respect to the question on intent, Federal Rule of Civil Procedure 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." See also *Uni\*Quality,* 974 F.2d at 924 ("[A]llegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions."). At this stage, Plaintiff has identified the evidence that provides a basis for his fraud claim (primarily, request letters and subsequent uses) but has only generally alleged an intent to deceive. As Defendant points out,

---

[4] Other district courts in parallel lawsuits have evaluated similar statements by publishers in license request letters and found them to constitute misrepresentations sufficient to support a fraud claim. See *Bergt v. McDougal Littell*, 2006 Wl 3782919, at \*4 (N.D. Ill. Dec. 21, 2006) (finding that since the complaint specifically alleged that publisher "falsely represented that it sought to use the painting in the textbook for a print run of 40,000, when in fact it knew at the time that it made that representation that its actual use would greatly exceed that number \* \* \* these allegations are sufficient to state a claim for fraud as they allege \* \* \* a misrepresentation"); *Wood v. Houghton Mifflin Harcourt Publishing Co.*, 569 F. Supp. 2d 1135, 1140 (D. Colo. 2008) ("Reading these letters in the light most favorable to Wood, these statements could be construed as representations that HMH would not exceed the licenses by printing more than 40,000 copies. Thus, the attached letters do not contradict the complaint, and the Court concludes that Wood has sufficiently alleged that Defendants made a false representation."); *Bean v. John Wiley & Sons, Inc.*, 2011 WL 3348959, at \*2 (D. Ariz. Aug. 3, 2011).

Plaintiff has not actually pointed to statements made by Defendant that it knew its actual uses would exceed the permission requested and that Defendant intended to obtain access at a lower cost. However, although Plaintiff's allegations regarding Defendant's intent to defraud him are made "upon information and belief," he also alleges a scheme by which Defendant intentionally deceived licensors about its planned uses of their visual art in order to (i) obtain lower pricing for licenses and (ii) hide its later copyright infringements. See generally Compl. at ¶¶ 9-18. His contention is that, because the request letters set forth certain limitations, and Defendant routinely exceeded those limitations, Defendant must have intended to defraud Plaintiff all along.

Although Plaintiff maintains that he is not bringing a claim of promissory fraud—that is, fraudulent statements concerning future performance (see *Trade Finance Partners, LLC v. AAR Corp.,* 573 F.3d 401, 413 (7th Cir. 2009) (promissory fraud involves "a false statement of intent regarding future conduct rather than present or past facts"))—he in fact appears to be doing just that. In Illinois, promissory fraud is disfavored and not actionable, unless it is "part of a scheme to defraud." *Id.* (citations omitted); see also *Desnick v. Am. Broadcasting Cos.,* 44 F.3d 1345, 1354 (7th Cir.1995) (noting there is "understandable ambivalence * * * about allowing suits to be based on nothing more than an allegation of a fraudulent promise."). The "scheme to defraud" exception applies when the fraud is "one element of a pattern of fraudulent acts" (*Speakers of Sport, Inc. v. Proserv, Inc.* 178 F.3d 862, 866 (7th Cir. 1999)), and the scheme is intended to induce the promisee to act for the promisor's benefit at the time of the promise. See *Bower v. Jones,* 978 F.2d 1004, 1011-12 (7th Cir. 1992); see also *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.,* 493 F.3d 841, 847 (7th Cir. 2007) (promissory fraud involves "a false representation of intent to fulfill the promise at the time the promise was made."). If, however, the promisor simply changed its mind, then it may have breached the contract, but it has not

committed fraud. *Bower,* 978 F.2d at 1012 (quoting *Price v. Highland Community Bank,* 772 F.Supp. 454, 459-60 (N.D. Ill. 1989) (Posner, J., sitting by designation)).

Given that Plaintiff has limited his claims to the alleged misrepresentations set forth in sufficient detail in Exhibits B through E to Plaintiff's complaint and also alleged that Defendant's conduct is part of continuous scheme, his allegations are sufficient (though barely) to support a claim for promissory fraud. He has sufficiently alleged that at the time Defendant solicited licences from Plaintiff, Defendant routinely knew its use would exceed the permission requested and that Defendant intended by its misrepresentations to obtain access at a lower cost than it would have paid had Defendant been honest about its intended usage. If proven to be true, Defendant's actions—evincing the attitude that it is cheaper to infringe now, hope not to get caught, and pay later if necessary—would be fraudulent. However, the Court cautions Plaintiff that "[b]roken promises, without more, are breaches of contract" and not fraud. See *Analysts Int'l Corp. v. Recycled Paper Prods., Inc.*, 1987 WL 18360, at *2 (N.D. Ill. Oct. 7, 1987). Thus, as the case progresses, Plaintiff must develop evidence of Defendant's intent to deceive and of a scheme to defraud; allegations will not suffice at summary judgment. Defendant's partial motion to dismiss is denied.

## IV.    Conclusion

For these reasons, the Court denies Plaintiff's motion for a preliminary injunction [11] and also denies Defendant John Wiley and Sons' partial motion to dismiss [20].


Dated:  February 7, 2012                    _____

                                            Robert M. Dow, Jr.
                                            United States District Judge