IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT FRERCK,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN WILEY & SONS, INC.,<br><br>    Defendant. | CASE NO. 11-cv-02727<br>Hon. Robert M. Dow Jr.<br>Magistrate Judge Geraldine Soat Brown |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
CHALLENGE TO DEFENDANT'S CONFIDENTIALITY DESIGNATIONS**

Christopher P. Beall
Levine Sullivan Koch & Schulz, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
cbeall@lskslaw.com

William McGrath
Kevin A. Thompson
Davis McGrath LLC
125 South Wacker Drive
Chicago, Illinois 60606
wmcgrath@davismcgrath.com
kthompson@davismcgrath.com

Ashima Aggarwal
Joseph Barker
John Wiley & Sons, Inc.
111 River Street
Hoboken, New Jersey 07030
(T): (201) 748-6000
(F): (201) 748-6088
aaggarwal@wiley.com
jobarker@wiley.com

*Attorneys for Defendant John Wiley & Sons, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

BACKGROUND .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 5

CONCLUSION ................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.H. Emery Co. v. Marcan Products Corp.*,
  389 F.2d 11 (2d Cir. 1968) ........................................................................................................7

*Agence France Presse v. Morel,*
  No. 10 Civ. 2730(AJN)(MHD), 2012 WL 2130883 (S.D.N.Y Jun. 11, 2012) .........................9

*In re Aqua Dots Prods. Liability Litig.*,
  No. 1-08-cv-2364, 2009 WL 1766776 (N.D. Ill. June 23, 2009) ..............................................9

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
  784 F.2d 1325 (7th Cir. 1986) ...................................................................................................9

*Baxter Int'l, Inc. v. Abbott Labs.*,
  297 F.3d 544 (7th Cir. 2002) ..................................................................................................8-9

*Bean v. John Wiley & Sons, Inc.*,
  No. CV 11-08028-PCT-FJM, 2012 WL 1078662 (D. Ariz. Mar. 30, 2012) ................. 5, 10, 11

*Bean v. Pearson Educ., Inc.*,
  No. CV 11-8030-PCT-PGR, 2012 WL 2929631 (D. Ariz. July 18, 2012) ...............................5

*Clifton v. Pearson Educ., Inc.*,
  No. CV 11–03640–EJD (PSG), 2012 WL 1669362 (N.D. Cal. May 11, 2012) ...................6, 8

*Culinary Foods, Inc. v. Raychem Corp.*,
  151 F.R.D. 297 (N.D. Ill. 1993) ................................................................................................9

*DRK Photo v. The McGraw-Hill Companies, Inc.*,
  No. CV 12-8093-PCT-PGR, 2012 WL 4932659 (D. Ariz. Oct. 16, 2012) ...............................5

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*,
  26 F. Supp. 2d 606 (S.D.N.Y. 1998) .........................................................................................9

*Grant Heilman Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*,
  No. 10 CV 00584 (MSG) (E.D. Pa. Nov. 1, 2010) ...................................................................6

*Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*,
  No. 5:11-cv-1665-JKG (E.D. Pa. May 17, 2011) ......................................................................5

*Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*,
  No. 11-cv-4649, 2012 WL 1956787 (E.D. Pa. May 31, 2012) ...............................................5-6

*John Wiley & Sons, Inc. v. DRK Photo*,
 No. 1:11-cv-05454-KPF (S.D.N.Y. July 16, 2013) ................................................................5

*Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*,
 No. 11-cv-05122 (E.D. Pa. Mar. 13, 2012) ........................................................................6

*Muench Photography, Inc. v. Pearson Education, Inc.*,
 No. 12-cv-01927-WHO, 2013 WL 4475900 (N.D. Cal. Aug. 15, 2013) .................................5

*PepsiCo, Inc. v. Redmond*,
 54 F.3d 1262 (7th Cir. 1995) ............................................................................................9

*Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*,
 925 F.2d 174 (7th Cir. 1991) ............................................................................................7

*Strait v. Belcan Eng'g Grp., Inc.*,
 No. 11-cv-1306, 2012 WL 2277903 (N.D. Ill. June 18, 2012) .................................................9

*Wu v. Pearson Educ., Inc.*,
 No. 09-6557 (RJH)(JCF) (S.D.N.Y. Nov. 29, 2010) ................................................................6

Defendant John Wiley & Sons, Inc. ("Wiley") respectfully submits this Response in opposition to that portion of the arguments by Plaintiff Robert Frerck ("Frerck") in "Plaintiff's Motion to Provisionally File Documents Defendant Has Improperly Designated Confidential and Plaintiff's Challenge to Such Designations," (herein, "Pl.'s Mot.") (Doc. No. 156, filed Nov. 20, 2013), wherein Frerck seeks an order removing the confidentiality protections for print run and sales counts contained in certain of the documents lodged by Frerck in support of Plaintiff's Motion for Partial Summary Judgment (Doc. No. 155, filed Nov. 20, 2013). Specifically, Wiley does not oppose the initial request to file these documents under seal. Also, Wiley does not oppose the public disclosure of certain print run and sales counts in certain of these documents where the information is no longer competitively valuable because of its age. However, Wiley does oppose the removal of confidential protection, and any resulting public filing, of specific print run and sales counts for those of its books that have had sales within the last six years, where such specific, particularized information is competitively valuable and its disclosure would put Wiley at a competitive disadvantage with other textbook publishers, and where the specific, particularized numbers of units printed or sold are unnecessary to the Court's resolution of the plaintiff's summary judgment motion.

In partial opposition, therefore, Wiley states as follows:

## BACKGROUND

The current motion constitutes yet another salvo by plaintiff's counsel in their apparently never-ending quest to force public dissemination of Wiley's confidential print run information so as to facilitate their business marketing efforts to sign up yet more litigants to bring yet more contingent-fee litigation against Wiley. However, the question of confidentiality for Wiley's print run information has already been addressed in this case as well as others, and as with the

prior occasions, the balance of interests favors maintaining confidentiality for the specific print run and sales numbers for Wiley's more recent textbooks.

The current motion actually is yet another reverberation of a dispute between the parties that began early in this case when Frerck sought to insert into the terms of an umbrella protective order an explicit exclusion of confidentiality protection for print run information.  *See* Decl. of Ashima Aggarwal, Ex. 3, ¶ 1 (Doc. No. 33-3, filed Aug. 4, 2011).  In the face of that disagreement, the question of confidentiality protection for print run information was submitted to the Hon. Geraldine Soat Brown on Wiley's motion for entry of an umbrella protective order, where Wiley sought to maintain its right to designate print run information as confidential.  *See* Mot. for Protective Order, at 2-5 (Doc. No. 32, filed Aug. 4, 2011).  On October 19, 2011, after a full, contested hearing on the motion, Magistrate Judge Brown sided with Wiley and refused to adopt the version of the protective order proposed by Frerck that would have excluded confidentiality protection for print run information.  *See* Notification of Docket Entry (Doc. No. 66, entered Oct. 19, 2011); *see also* Protective Order (Doc. No. 67, entered Oct. 19, 2011).

Not content with this outcome, Frerck filed an Objection to the magistrate judge's ruling, again explicitly challenging Wiley's right to maintain the confidentiality of its print run information.  *See* Pl.'s Objections to Magistrate Judge Brown's Oct. 18 Ruling, at 10 (Doc. No. 69, filed Oct. 27, 2011).  This Court, however, rejected plaintiff's argument, affirming Magistrate Judge Brown's conclusion that print run information could be protected as confidential information under the protective order.  *See* Order, at 1-2 (Doc. No. 92, entered Jan. 6, 2012).

Thus, pursuant to the terms of the Protective Order, when called to produce documents containing print run units or sales revenues, as well as other financial information, Wiley designated such documents as "CONFIDENTIAL," and clearly labeled the files as such.  *See*

Declaration of Christopher P. Beall, dated Dec. 23, 2013 ("Beall Decl.") ¶ 2, filed herewith. More than two years after Wiley produced the two documents at issue in this motion, plaintiff's counsel notified Wiley as to Frerck's challenge of the confidentiality designation of these documents. *See id.* ¶ 3 and Ex. 1. During the ensuing meet-and-confer consultations between the parties' counsel, Wiley notified Frerck of its consent to public disclosure of print run information for titles that have had no sales within the last six years, but that Wiley maintains its confidentiality designation for such information in connection with titles that have had sales within the last six years. *See id.* ¶¶ 9-10 and Ex. 3.

The current motion challenging Wiley's confidentiality designations pertains to just two documents: WFRERCK 0001223-52 and WFRERCK 0002730. Confidential information from those two documents was presented in seven of the exhibits attached to the Kerr Declaration submitted in connection with Plaintiff's Motion for Partial Summary Judgment (Doc. No. 155, filed Nov. 20, 2013): Kerr Decl. Ex. 1 (in part) (Doc. No. 155-10), Ex. 2 (in part) (Doc. 155-11), Exs. 3-5 (Doc. Nos. 155-12 – 155-14) and Exs. 7-8 (Doc. Nos. 155-16 & 155-17).[1]

As indicated in the accompanying Beall Declaration, Wiley does not object to the public disclosure of the general substance of the print run and distribution information in those exhibits to the Kerr Declaration for the eight titles at issue which have had sales within the last six years, as follows:

---

[1] With regard to two specific titles, Wiley does not object to the public disclosure of specific print run units and distribution information because these titles have had no sales within the last six years: *Dicho y Hecho: Beginning Spanish*, Fifth Edition, by Laila and Albert Dawson © 1997, and *Environmental Science: Earth as a Living Planet*, Third Edition, by Botkin © 2000. *See* Beall Decl. ¶ 9.

In addition, Wiley does not claim confidentiality with regard to the names of the countries where it has sold its textbooks, as this information is and has been public, but only as to the number of specific units sold in each country. *See* Beall Decl ¶ 9.

a. *The Sciences*, Second Edition, by Trefil, Update Edition © 1999 (FAC, Row 81): Print run – More than 15,000 copies.

b. *Dicho y Hecho: Beginning Spanish*, Sixth Edition, by Laila and Albert Dawson © 2001 (FAC, Ex. A, Rows 98-121): Print run – More than 40,000 copies. Geographical distribution – Less than 10% of listed print run outside North America.

c. *Engineering Mechanics Statics,* Fifth Edition (Metric version), by Meriam Kraige © 2002 (FAC, Ex. A, Row 147): Print run – More than 15,000 copies.

d. *Environmental Science: Earth as a Living Planet*, Fourth Edition, by Botkin © 2002 (FAC, Ex. A, Row 148): Geographic distribution – More than 10% of listed print run outside North America.

e. *Repase y Escriba*, Fourth Edition by Dominicis © 2002 (FAC, Ex. A, Row 150): Print run – More than 15,000 copies.

f. *Environmental Science: Earth as a Living Planet*, Fifth Edition, by Botkin © 2006 (FAC, Ex. A, Row 236): Geographic distribution – More than 10% of listed print run outside North America.

g. *Environmental Science: Earth as a Living Planet*, Sixth Edition, by Botkin © 2007 (FAC, Ex. A, Row 246): Geographic distribution – More than 10% of listed print run outside North America.

h. *Environmental Science: Earth as a Living Planet*, Seventh Edition, by Botkin © 2007 (FAC, Ex. A, Row 264): Geographic distribution – Less than 10% of listed print run outside North America.

# ARGUMENT

As Frerck's counsel is well aware – because they regularly lose motions such as the one presented here – courts have consistently agreed with Wiley that its sales, revenue, and print run information should be kept confidential. *See, e.g.*, *John Wiley & Sons, Inc. v. DRK Photo*, No. 1:11-cv-05454-KPF (S.D.N.Y. July 16, 2013) (Doc. No. 85) (Order), attached as Ex. 4 to the accompanying Beall Declaration; *see also Bean v. John Wiley & Sons, Inc.*, No. CV 11-08028-PCT-FJM, 2012 WL 1078662, at *5-6 (D. Ariz. Mar. 30, 2012) (maintaining sealing of print run information submitted in connection with plaintiff's motion for summary judgment); *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, No. 5:11-cv-1665-JKG (E.D. Pa. May 17, 2011) (Tr. of Prelim. Inj. Hr'g, 140:19-141:22) (excerpt previously filed in this case as Ex. 6 to the Supplemental Declaration of Ashima Aggarwal (Doc. No. 46, filed Sept. 6, 2011)). Indeed, in the *DRK Photo* case, Judge Failla most recently rejected the arguments of DRK Photo, a photo agency also represented by Frerck's counsel, with regard to its challenges of Wiley's confidentiality designations for print run and sales information for three of the ***very same titles*** that are also at issue in this motion on ***precisely the same posture***, that is, submission of print run information in connection with a motion for partial summary judgment as to copyright infringement liability. *See* Beall Decl. ¶¶ 13-16 and Exs. 4-6.

Other publishers have had similar results. *See, e.g.*, *Muench Photography, Inc. v. Pearson Education, Inc.*, No. 12-cv-01927-WHO, 2013 WL 4475900, at *4-6 (N.D. Cal. Aug. 15, 2013) (denying challenge to confidentiality designation for print run information); *DRK Photo v. The McGraw-Hill Companies, Inc.*, No. CV 12-8093-PCT-PGR, 2012 WL 4932659, at *2 (D. Ariz. Oct. 16, 2012) (same); *Bean v. Pearson Educ., Inc.*, No. CV 11-8030-PCT-PGR, 2012 WL 2929631, at *2 (D. Ariz. July 18, 2012) (same); *Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*, No. 11-cv-4649, 2012 WL 1956787, at *5 (E.D. Pa. May 31, 2012)

(confirming confidentiality protection for print run information); *Wu v. Pearson Educ., Inc.*, No. 09-6557 (RJH)(JCF) (S.D.N.Y. Nov. 29, 2010) (Doc. No. 78, Endorsed Memo. at 4) (denying plaintiff's application to strike "Confidential" designation upon finding that defendant had "established the commercial sensitivity of its print runs and related information") attached as Ex. 7 to the accompanying Beall Declaration; *Grant Heilman Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 10 CV 00584 (MSG) (E.D. Pa. Nov. 1, 2010) (Doc. No. 66) (entering protective order pursuant to which "print run summaries . . . shall be designated as 'Confidential'" and "vendor names, print order dates, and print order quantities" shall be redacted prior to filing with the court) attached as Ex. 8 to the accompanying Beall Declaration.[2]

The prior proceedings in this case – relating to the parties' litigation of the Protective Order and whether print run information may be designated as confidential – made abundantly clear that Wiley does indeed take significant steps to maintain the confidentiality of its print run information, and further that public disclosure of the specific amounts of its sales would put Wiley at a competitive disadvantage with other textbook publishers. *See, e.g.*, Declaration of Jane Ann Berlin, ¶¶ 4-7, previously filed in this case as Doc. No. 34, Aug. 4, 2011; Supplemental Declaration of Jane Ann Berlin, ¶¶ 2-10, previously filed in this case as Doc. No. 47, Sept. 16, 2011 ("Suppl. Berlin Decl.").[3]

---

[2] Frerck's motion cites two decisions in two cases against Pearson Education where the courts ruled that the textbook publisher's print run information need not be sealed. *See* Pl.'s Mot., at 4-5 (citing *Jon Feingersh Photography, Inc. v. Pearson Educ., Inc.*, No. 11-cv-05122, Doc. No. 31 (E.D. Pa. Mar. 13, 2012), and *Clifton v. Pearson Educ., Inc.*, No. CV 11–03640–EJD (PSG), 2012 WL 1669362, at *2 (N.D. Cal. May 11, 2012)). Neither of these cases is apposite here because in both cases, Pearson had disclosed its print run information to the plaintiffs themselves prior to suit without any confidentiality protection or non-disclosure agreements. *See, e.g.*, *Clifton*, 2012 WL 1669362, at *2.

[3] In support of his motion, Frerck has offered once again an often-recycled declaration of Michael Harmon, who is the brother of the plaintiff's lead counsel Maurice Harmon, in support of Frerck's contention that Wiley failed to take adequate measures to maintain the confidentiality of Wiley's print run information. *See* Decl. of Michael Harmon, Doc. No. 156-4, filed Nov. 20, 2013. This same declaration from Michael Harmon, as well as a similar shorter one, was previously filed in this case in connection

*Continued on following page . . . :*

Moreover, when Frerck's counsel recently took the corporate deposition of Wiley in another case, with regard to the question of harm to Wiley from the public disclosure of Wiley's print run information, during which plaintiff's counsel presented some of the very same documents placed in the record on this motion, Wiley's corporate representative Ryan Flahive testified extensively concerning the specific harm to Wiley in the event of a public disclosure of Wiley's specific print run information. *See* Beall Decl., Ex. 9. As Mr. Flahive made clear, disclosure of the specific print run units for Wiley's recent books would allow Wiley's competitors to calibrate their product development, marketing, and distribution plans so as to identify which products to launch, or not launch, and in which markets, all in a manner that Mr. Flahive would never be able to discern because it would be undertaken behind his competitors' closed doors. *Id.* Indeed, Mr. Flahive also exclaimed in surprise at the competitive benefit to Wiley of the information in documents presented to him by plaintiff's counsel that showed

---

*Continued from previous page . . . :*

with the prior motions practice related to the umbrella Protective Order. *See* Doc. No. 51-1, filed Sept. 28, 211, and Doc. No. 44-2, filed Sept. 9, 2011. In both declarations, Michael Harmon asserts that Wiley's former photo editor Hilary Newman made unprotected disclosures of print run information to him when he contacted her on behalf of a photographer. But, Ms. Newman has contested these assertions in her own declaration. *See* Decl. of Hilary Newman, Doc. No. 48, filed Sept. 16, 2011.

Frerck also has submitted a declaration from Robert Folz, as he had done before, *see* Doc. 44-3, filed Sept. 9, 2011, in further support of his contentions on this motion. *See* Decl. of Robert Folz, Doc. No. 156-2, filed Nov. 20, 2013. However, as Wiley's former vice president of production and manufacturing Jane Ann Berlin already made clear in her previously filed declaration, Wiley's disclosures to Mr. Folz were made in the context of settlement negotiations that Wiley had clearly indicated were confidential. *See* Suppl. Berlin Decl., ¶¶ 6, 7.

Notwithstanding these points, such disclosures do not undermine the confidential status of Wiley's print run information because the disclosures were made in the context of ongoing business relationships between the photographers and Wiley. *See* Suppl. Berlin Decl., ¶ 7; *see also Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 177 (7th Cir. 1991) (holding that disclosure "is often necessary to the efficient exploitation of a trade secret" and citing *A.H. Emery Co. v. Marcan Products Corp.*, 389 F.2d 11, 16 (2d Cir. 1968) (holding that not every disclosure of confidential information constitutes a waiver of trade secret status)).

specific print run counts for Pearson's products where Pearson's confidentiality protection for its print run information had been stripped away:

> Q. So you've not seen this document before?
>
> A. I have not, but I'm enjoying it.
> . . .
> A. But I can see now, you know, specifically -- like Western Governors University, they did a custom[] version, so I know to send my rep in to do something custom. That's the second -- the third and fourth from the bottom lines.
>
> Q. Oh, okay.
>
> A. So these are, like, specific adoptions that I now know are customized, worth 200 copies, which is significant in my market, significant amount of money, I'm going right after them, tell my reps, hey, look at this. This is really good information to figure out what to target.
>
> Q. So there's a specific value to your customized copies or custom copies?
>
> A. It's -- it's -- it's important intelligence because you know that that's for that adoption, part of the cost of entry and what they find valuable.

Beall Decl., Ex. 8.[4]

As the Court is well aware, and Wiley does not dispute, documents that influence or underpin a judicial decision should generally be available to the public "unless they meet the

---

[4] Mr. Flahive's testimony on behalf of Wiley also demonstrates the error of the conclusion by the *Clifton* court cited by Frerck, *see* Pl.'s Mot., at 5 (citing *Clifton*, 2012 WL 1669362, at *2), where the *Clifton* court made the unsupported assertion that it "doubts Pearson's competitors armed with print run information that is in many cases years old, can use this information to divine Pearson's current sales strategies." In direct contradiction of this assertion, Mr. Flahive – clearly a competitor of Pearson – was able to discern upon a moment's perusal in the very midst of a deposition not only Pearson's sales strategies from Pearson's print run information, but also strategies for Wiley in how Wiley could exploit Pearson's information to Wiley's benefit. This testimony by Mr. Flahive should provide a cautionary note to courts who cavalierly assume that a business' confidential information can be disclosed willy-nilly without harm to the business.

definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002). In the context of this over-arching principle, it is clear that confidential commercial information, including information that would allow a competitor to silently exploit a litigation party's marketing strategies and pricing architecture, can qualify for sealing in a court file. *See id.* at 547 (holding that competitive business information constitutes a trade secret where its "economic value depends on its secrecy"); *see also PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (holding that information regarding pricing, distribution and marketing constituted trade secret material); *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1345-46 (7th Cir. 1986) (finding information related to bids and marketing plans was "unquestionably sensitive trade secrets" and warranted protection from unnecessary disclosure, as counterparties "could use it to advantage in the next round of negotiations"); *In re Aqua Dots Prods. Liability Litig.*, No. 1-08-cv-2364, 2009 WL 1766776, at *2 (N.D. Ill. June 23, 2009) ("'matters whose disclosure would affect defendants with their respective competitors or in conjunction with the day-to-day operation of their business' warrant protection") (quoting *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 301 (N.D. Ill. 1993)); *Strait v. Belcan Eng'g Grp., Inc.*, No. 11-cv-1306, 2012 WL 2277903, at *3-4 (N.D. Ill. June 18, 2012) (same); *cf., e.g.*, *Agence France Presse v. Morel,* No. 10 Civ. 2730(AJN)(MHD), 2012 WL 2130883, at *2-3 (S.D.N.Y Jun. 11, 2012) (sealing portions of Getty's license agreement due to fear that Getty's partners "would demand changes in their agreements with Getty and that Getty's competitors would use any disruption in those relationships to steal some of the partners."); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, at 613-14 (S.D.N.Y. 1998) (sealing "operations information and the licensing fees HBO paid" because "defendants' competitive position would be affected at

most, if not all, economic levels, vis-a-vis their direct and indirect competitors, upstream suppliers and downstream customers.").

As the District Court in Arizona explained when it concluded that print run information from Wiley that had been submitted in connection with a plaintiff's summary judgment motion should remain under seal:

> [D]efendant has shown compelling reasons to seal this exhibit that override the historic need for public access to the judicial record. In particular, defendant has demonstrated that the information contained in the charts is kept confidential not only from the public, but also from its own employees. If the information about defendant's exact sales and production numbers is released, its competitors can use these figures to defendant's detriment. And the exact numbers of books published and amounts of revenue generated was not relevant to our determination of the question before us on summary judgment—whether defendant infringed plaintiff's copyrights. There is other evidence already in the public record that reveals defendant's infringement. On balance, the harm to defendant from public release of the exhibit outweighs the interest in access to evidence that is not crucial to the public's understanding of our ruling on the issue of liability.

*Bean*, 2012 WL 1078662, at *6.

The crucial point in this case is that the specific print run and geographical distribution unit counts contained the Kerr Declaration exhibits are not in fact necessary to the Court's resolution of Frerck's summary judgment motion. Rather, those specific numbers of units printed and units sold outside North America are merely particularized counts that are more granular than necessary to answer the simple question of whether Wiley is "over" or "under" an invoice limitation.

For example, the Court need not know the specific number of units printed for *Dicho y Hecho: Beginning Spanish*, Sixth Edition, when it determines whether Wiley's printing of more than the 40,000 copies listed in the invoice for that book constitutes copyright infringement. Wiley has disclosed that it did indeed print more than 40,000 copies. *See* Beall Decl., ¶ 11b.

The particular number of units over that 40,000-copy threshold is immaterial to the binary, over/under question of whether Wiley printed more copies than the invoice listed.

In this context, none of the specific unit counts in the documents lodged by Frerck actually are necessary to any decision the Court might make on Frerck's summary judgment motion, and they therefore cannot be deemed to "influence or underpin" any judicial determination. All of the Court's liability determinations will be made solely on the strength of the generalized "over" or "under" question that is answered by the summaries contained in this brief and in the accompanying Beall Declaration.[5] As a result, there is no public interest in the disclosure of the specific unit counts in the Kerr Declaration exhibits, and these particularized units counts should be maintained under seal. *See Bean*, 2012 WL 1078662, at *6.

## CONCLUSION

**WHEREFORE**, Wiley respectfully requests that the Court maintain the sealing of the specific print run and geographic distribution unit counts in the following documents: the portions of Lodged Exhibit Nos. 1 and 2 not pertaining to the books *Dicho y Hecho*, 5th Edition, and *Environmental Science*, 3rd Edition, as well as Lodged Exhibit Nos. 3-5 and 7-8, all attached to the Kerr Declaration (Doc. No. 155-9).[6]

---

[5] In fact, during the meet-and-confer prior to this motion, Wiley offered to enter into a stipulation as to the over or under nature of its distribution counts. *See* Beall Decl., Ex. 3. Such a publicly available stipulation could have been attached to Frerck's summary judgment motion, and it would have avoided entirely this dispute concerning confidentiality of specific unit counts. Alternatively, Frerck has propounded requests for admission that asked Wiley to admit the over or under nature of its distribution. Wiley's responses relating to the general nature of Wiley's unit counts obviate the need for disclosure of the specific figures.

[6] To the extent the Court wishes, Wiley can provide redacted versions of the Kerr Declaration exhibits at issue here formatted for filing in the public record.

Dated: December 23, 2013                        Respectfully submitted,


                                                By:   */s/ Christopher P. Beall*
                                                Christopher P. Beall
                                                Levine Sullivan Koch & Schulz, LLP
                                                321 West 44th Street, Suite 1000
                                                New York, New York  10036
                                                (T): (212) 850-6100, (F): (212) 850-6299
                                                cbeall@lskslaw.com

                                                William McGrath
                                                Kevin Thompson
                                                Davis McGrath LLC
                                                125 South Wacker Drive
                                                Chicago, Illinois 60606
                                                (T): (312) 332-3033, (F): (312) 332-6376
                                                wmcgrath@davismcgrath.com
                                                kthompson@davismcgrath.com

                                                Ashima Aggarwal
                                                Joseph Barker
                                                John Wiley & Sons, Inc.
                                                111 River Street
                                                Hoboken, New Jersey 07030
                                                (T): (201) 748-6000, (F):  (201) 748-6088
                                                aaggarwal@wiley.com
                                                jobarker@wiley.com

                                                *Attorneys for John Wiley & Sons, Inc.*

# CERTIFICATE OF SERVICE

I, Christopher P. Beall, an attorney and counsel of record for Defendant John Wiley & Sons, Inc., certify that I electronically filed the foregoing **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S CHALLENGE TO DEFENDANT'S CONFIDENTIALITY DESIGNATIONS** with the Clerk of the Court using the CM/ECF electronic filing system, which will send automated notification of this filing to all counsel of record on this date.

Dated: December 23, 2013                  By:    */s/ Christopher P. Beall*