**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT FRERCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 11-cv-2727 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| JOHN WILEY & SONS, INC. and JOHN | ) | |
| DOE PRINTERS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Robert Frerck's motion for partial summary judgment [154 and 155] and Defendant John Wiley and Son's partial motion for summary judgment [164]. For the reasons set forth below, the Court grants in part and denies in part Frerck's motion for partial summary judgment [154 and 155] and grants Defendant John Wiley and Sons' partial motion for summary judgment [164].

## I.    Background

The relevant facts in this matter are largely undisputed. Plaintiff Robert Frerck is a professional photographer who resides in Chicago, Illinois. He also is the owner of Odyssey Productions, Inc., a stock photography agency. Defendant John Wiley and Sons, Inc. is a textbook publisher, located in Hoboken, New Jersey. Between approximately 1996 and 2009, Plaintiff, through his agencies, sold Defendant limited licenses to use a number of Plaintiff's photographs in Defendant's publications. The restrictions on these licenses included, among other things, limitations on the authorized print quantities for the various educational publications at issue, limitations on the geographic distribution for such publications, and limitations on the type of media in which the photographs could be reproduced. Defendant then

reproduced the photographs in the publications identified in Exhibit 1 to the Alex Kerr Declaration (attached to Plaintiff's partial motion for summary judgment). Despite the limits set forth in the licenses that it obtained, it is undisputed that Defendant used certain of the photographs beyond license limits in various publications. Specifically, in certain instances, Defendant reproduced more copies of photographs than was permitted by the licenses, distributed photographs beyond the licenses' limitations on geographic distribution, and reproduced photographs in unlicensed electronic media.

The parties' negotiations concerning the use of Plaintiff's photos typically began when the title was in the pre-publication phase. Defendant Wiley's photo department would contact Plaintiff or his agents to request permission to use certain images, and Plaintiff typically would agree. In order to process payment, Defendant would send an invoice request letter to Plaintiff, and Plaintiff would then issue an invoice to Defendant. Such letter typically would identify the image requested, the publication for which it would be used, and the estimated usage. Because the textbook had not yet been published, the usage necessarily would be an estimate. However, in regard to the photographs that are at issue in these motions, the initial licenses were the only licenses that Defendant sought. In other words, if the actual usage exceeded the license granted, Defendant did not seek license renewals or permission to use the photographs beyond the scope of the initial licenses.

On April 25, 2011, Plaintiff filed this action, alleging claims for copyright infringement (Count I) and fraud (Count II) against Defendant Wiley. Plaintiff also asserted a claim of copyright infringement against ten unidentified third parties, dubbed the "John Doe Printers" (Count III). On January 3, 2013, Frerck filed an amended complaint, dropping his claims against the John Doe Printers as well as certain infringement claims against Wiley and asserting

additional claims against Wiley, including new counts for contributory infringement (Count III) and vicarious infringement (Count IV). Frerck's claims of direct copyright infringement arise out of Wiley's alleged unauthorized use of his images, including printing copies in excess of the authorized limits, distributing copies outside of the authorized territories, and reproducing the images in unauthorized formats. Exhibit A to the first amended complaint identifies the type of infringement for each image as well as the applicable invoice and licenses limits.

## II.    Legal Standard on Cross Motions for Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross motions for summary judgment, the Court construes all facts and inferences "in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005)); see also *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 888 (7th Cir. 2011); *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir.2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing

summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

Plaintiff moves for partial summary judgment on his copyright infringement claim (Count I) against Defendant, seeking a finding of liability on 102 claims of copyright infringement, which are alleged in the first amended complaint and identified in Exhibit 1 to the Kerr Declaration filed concurrently with Plaintiff's summary judgment motion.[1]   In turn, Defendant moves for summary judgment on Plaintiff's claims of fraud (Count II), contributory infringement (Count III), and vicarious infringement (Count IV).   Defendant also moves for summary judgment as to certain claims of copyright infringement alleged in Count I.  The Court first addresses Plaintiff's partial motion for summary judgment.

III.     **Analysis of Plaintiff's Motion for Partial Summary Judgment**

To establish copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) the infringer's unauthorized copying of protected elements of the copyrighted material.  *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007).  Where, as here, the works in question were licensed to the defendant, the plaintiff must show that the defendant's use went beyond the license terms.  See *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) ("The licensee violates the copyright by exceeding the scope of this license."); *Estate of Brown v. Arc Music Grp.*, 2013 WL 1277064, at *3 (7th Cir. Mar. 29, 2013).

---

[1]   In certain circumstances, Plaintiff asserts multiple theories of infringement with regard to the same photo in the same book.

## A.    Ownership of valid copyright

Plaintiff has submitted evidence that he owns the copyrights to the photographs that he licensed to Wiley.  In Wiley's response brief, it challenges seven images as failing to have been properly registered with the Copyright Office.  However, in his reply brief, Plaintiff admitted that incorrect registration numbers were identified for six of the photographs in Exhibit A.  He then provided the correct registrations for the six photographs.  The seventh photograph, Image #MEXCS04H004, is listed with the correct registration number, VA 1-709-681. In the deposit for this copyright registration (VA 1-709-681), the number on the photograph itself is "MEXCS04H004," but the adjacent Image ID column in the deposit document states, "MEXCS04B044."  The later ID# ("MEXCS04B044") is the same as that listed in the ID column for the preceding (and different) image.  Despite this error in the deposit document, Plaintiff has sufficiently demonstrated that Image #MEXCS04H004 was included in the VA 1-709-681 deposit and properly registered.

Defendant also contends that the copyright registration for Image #PERUS06D00120 is invalid because it was published individually before being registered as part of a published collection.  Defendant's arguments are belied by the relatively recent amendment to 17 U.S.C. § 411.  In December 2008, Congress amended 17 U.S.C. § 411 to provide that a certificate of registration satisfies the section's registration requirements, "regardless of whether the certificate contains any inaccurate information, unless" the following two requirements are met: (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.  *Olem Shoe Corp. v. Washington Shoe Co.*, 2010 WL 3505100, *1-2 (S.D. Fla. Sept. 3, 2010) (citing 17 U.S.C. § 411).  The Seventh Circuit

followed and clarified this two-step process in *DeliverMed Holdings, LLC v. Schaltenbrand24*, a case not cited by Defendant:

> [C]ourts can demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality. In other words, a litigant should demonstrate that (1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office. 17 U.S.C. 411(b)(1)(A). Once these requirements are met, a court may question the Register as to whether the inaccuracy would have resulted in the application's refusal.

734 F.3d 616, 625 (7th Cir. 2013). Defendant has neither cited nor complied with the statute or *DeliverMed*. It has failed to satisfy the statute's threshold, as articulated in *DeliverMed*, by producing evidence that Plaintiff knew of his error when he submitted his registration application to the Copyright Office. In fact, when Plaintiff was questioned about Image ID #PERUS06D001 during his deposition, defense counsel did not question him about its registration or Plaintiff's knowledge of the accuracy of his application information at the time of its registration.

By enacting § 411(b)(1)(A-B), Congress codified the result in the majority of cases that had previously decided that copyright registration should not be a trap for the unwary and that copyright infringers are not permitted to defeat registrations on technicalities. Because Defendant has not put forth sufficient evidence to show that Plaintiff knew of the inaccurate information at the time of his registration application, Defendant fails to create a genuine issue of material fact with respect to the validity of Registration No. VA 1-115-520.

## B. Unauthorized Use

### 1. *Withdrawn claims*

Plaintiff withdraws two claims for infringement: (1) unlicensed digital use of the image in Row 49 of Exhibit 1 to the Kerr Declaration; and (2) distribution of the image in Row 53 to an unlicensed geographic area.

## 2. Remaining claims

In addition to demonstrating that he has valid registrations for the copyrights at issue, Plaintiff also has submitted evidence that the licenses issued to Defendant—identified in Exhibit 1 to the Kerr Declaration and Exhibit A to the Frerck Declaration—were limited in scope. Each license limited the print quantities, geographic distribution, and media of the photographs for particular publications. These limits were clearly set forth in the written invoices provided to Defendant. Moreover, Defendant's payment of the license fees set forth in the invoices, coupled with Defendant's subsequent use of the photographs, demonstrate Defendant Wiley's acceptance of the license terms.

Despite the limitations on scope, Plaintiff has presented evidence that on many occasions Defendant printed more copies than were authorized; distributed photographs beyond the geographic limitations in the licenses; and reproduced photographs in unlicensed electronic media. The Court points to a few examples to illustrate Defendant's use of the photographs beyond authorized parameters. The license identified in row 36 of Exhibit 1 to the Kerr Declaration authorized Wiley to print 40,000 copies of a photograph. According to Defendant's own records, it printed 226,505 copies. The license identified in row 48 permitted 15,000 copies; Defendant printed 171,450 copies. The license identified in row 1 provided for 40,000 copies, yet Defendant printed 101,569. For the subsequent edition to the publication identified in row 1, Defendant again licensed for 40,000 copies, then printed 87,486. Further, despite licensing to distribute Plaintiff's images within North America only, Defendant distributed thousands of copies of publications containing Plaintiff's images to countries around the world. Finally, Defendant reproduced the image in row 51 in an electronic product despite licensing and paying for paper print rights only.

Defendant's response identifies alleged issues of material fact with respect to 44 of the 102 claims of copyright infringement for which Plaintiff seeks summary judgment. The Court addresses Defendant's specific objections below. However, with respect to the remaining 58 claims, Defendant does not deny that it committed copyright infringement. Defendant therefore concedes infringement on these claims.

a.      Invoice No. 3333

Turning to Defendant's specific challenges, Defendant Wiley disputes Plaintiff's infringement claims with respect to the rights granted to Defendant in Invoice No. 3333.[2] Defendant states that it "requested that Odyssey send it a bill with a usage fee for 'one-time U.S. publication rights' for each of the 19 enumerated images with no restrictions on the number of copies it could reproduce." However, Defendant's May 23, 1996 letter is silent as to the number of copies that it was requesting permission to reproduce. In response, Plaintiff issued Invoice No. 3333, dated June 14, 1996, which contains a print run limitation of "under 40,000." Defendant paid this invoice, but then exceeded the print run limitation. Defendant now contends that there is conflicting evidence as to whether the parties agreed to a usage limitation of 40,000.

Defendant's arguments are unpersuasive. First, the invoice issued to Defendant clearly contains a print run limitation of under 40,000. Furthermore, two earlier invoices issued on behalf of Plaintiff by his agent on December 6, 1995, for the same title, also include print run limitations of under 40,000. (Defendant does not challenge Frerck's summary judgment for print overruns of these invoices.) Additionally, Wiley employee, Ann Berlin, testified that where a photographer does not have a preferred vendor agreement with Wiley (as is the case with Frerck), Defendant's use of an image is "guided by the invoice." Thus, per the invoice as well as

---

[2]   As set forth previously, Plaintiff has dropped his claim that one of his photographs in *Environmental Science: Earth As A Living Planet*, Seventh Edition, was distributed to an unlicensed geographic area.

the testimony of its own employee, Defendant should have honored the 40,000 print run limitation contained in Invoice No. 3333.

b.     International distribution

Defendant also argues that there is a dispute as to the geographic limits of the license agreements.  Defendant claims that "North American" distribution automatically permitted Defendant up to 10% of sales outside of North America.  However, Defendant has not presented any evidence that Plaintiff understood that authorizing it to distribute his photographs to "North America" included the right to distribute up to 10% of the allowed print run to countries outside of North America.  In fact, Defendant's interpretation of "North American" distribution runs contrary to the plain language of the licenses, which specified distribution solely in North America.  Without any evidence that Plaintiff was aware of an understanding that permitted 10% of the allowed print run to countries outside of North America, and further that he acquiesced in it, Defendant's argument fails.

Additionally, Defendant challenges Plaintiff's testimony (in a separate case) that he does not consider countries in the Caribbean and Central America to be part of North America.  To the extent that Defendant, without the authority to do so, distributed each of the images at issue in *this* litigation in Europe, Asia, or other countries clearly not included in either parties' definition of North America, Defendant's argument is immaterial.  However, to the extent that Defendant is challenging, in this litigation, infringement claims pertaining distributions in countries in the Caribbean and Central America, summary judgment in favor of Plaintiff would not be appropriate, as these areas are traditionally included within a description of North America.

c.     Electronic formats

Plaintiff claims that Defendant used his images in unlicensed electronic formats for two titles: *Dicho y Hecho: Beginning Spanish*, Sixth Edition (Invoice No. 5314) and *Environmental Science: Earth as a Living Planet*, Fifth Edition[64] (Invoice No. 7163).[3]   In its response to Plaintiff's summary judgment motion, Defendant contends that Plaintiff has failed to present sufficient evidence establishing that his images actually appear in any electronic versions of these titles.[4]   However, in its response to Plaintiff's First Set of Requests for Admission, Defendant admitted that it caused these titles to be reproduced in an electronic format and did not deny that the electronic versions include the same photographs as those that appear in the print versions.   Additionally, *Environmental Science: Earth as a Living Planet*, Fifth Edition, was included in the WileyPLUS program.   Wiley's employee, Ann Berlin, testified that WileyPLUS is an internet-based course management system that typically includes an exact electronic copy of the textbook.   Thus, Defendant has failed to show that there is a genuine issue of material fact with respect to whether Plaintiff's images appeared in electronic version of these titles.

In sum, but for the exceptions noted above, the facts and law are clear regarding the second prong of the two-part copyright infringement test and warrant summary judgment on Defendant's unauthorized uses of Plaintiff's photographs identified in Exhibit 1 to the Kerr Declaration.   See also *Wood v. Houghton Mifflin Harcourt Pub. Co.*, 589 F. Supp. 2d 1230, 1238-42 (D. Colo. 2008) ("Wood has also produced probative evidence that HMH exceeded the scope of the licenses issued for [four textbooks, by introducing HMH's admissions and inventory

---

[3]   In its response brief, Defendant challenged a third title, *Environmental Science: Earth as a Living Planet*, Fourth Edition (Invoice No. 6392).   Plaintiff then withdrew his motion for summary judgment with respect to unlicensed digital uses of his photograph in that title.

[4]   Plaintiff seeks summary judgment for print overruns and/or distribution of the print version of these titles outside of the licensed geographic area in Rows 25-47, and 51 of Exhibit 1 to the Kerr Declaration. Defendant does not deny that it used Plaintiff's images in the print versions of these textbooks. Defendant seeks to avoid infringement only for unlicensed electronic uses by arguing that Plaintiff has not proven that Defendant used his images in the electronic versions.

records demonstrating print quantities in excess of the licensed quantities] * * * * Therefore, for these four publications, Wood has met his burden of establishing that HMH exceeded the scope of its license and thus violated his copyright."); *Bean v. John Wiley & Sons, Inc.*, 2012 WL 1078662, at *3 (D. Ariz. March 30, 2012) ("It is undisputed that defendant infringed plaintiff's copyrights on each occasion as listed in Exhibits A and B to plaintiff's motion for partial summary judgment * * * * Accordingly, plaintiff is entitled to summary judgment on the issue of liability for each of the 108 instances of copyright infringement listed in Exhibits A and B").

### C.    Statute of Limitations

Defendant claims that issues of material fact as to the timeliness of Plaintiff's copyright claims foreclose summary judgment. Under 17 U.S.C. § 507(b), "[n]o civil action shall be maintained under [Title 17 of the U.S. Code] unless it is commenced within three years after the claim accrued." See *Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 845-46 (N.D. Ill. 2013). When applying the Copyright Act's limitation period to infringement claims based on an allegedly unauthorized publication of a work, the cause of action is deemed to accrue upon that publication. See, *e.g., Kwan v. Schlein*, 441 F. Supp. 2d 491, 499 (S.D.N.Y. 2006) ("Even applying the more liberal discovery rule," a plaintiff "knew or should have known * * * when the book was published-or shortly thereafter."); *Design Basics, LLC v. Roersma & Wurn Builders, Inc.*, 2012 WL 1830129, at *2 (W.D. Mich. Apr. 23, 2012) ("[I]f the infringement is open and notorious, the copyright holder should be expected to discover it within a three year period."). Plaintiff filed the original complaint on April 25, 2011.  Hence, the straight-forward application of the statute of limitation would otherwise bar any recovery of damages for infringements that occurred prior to April 26, 2008.  See also *Urbont v. Sony Music Entm't*, 863 F. Supp. 2d 279, 282 (S.D.N.Y. 2012).

Plaintiff contends that the "discovery rule" operates to save his infringement claims, based on Plaintiff's theory that he purportedly did not learn of his cause of action against Defendant Wiley until 2011.[5]  See, *e.g.*, *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009).  The first step in applying the discovery rule is establishing when the injury actually occurred.  *Id.* at 438; see also *Sellers v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996) ("the statute of limitations cannot begin to run until a defendant takes some action to injure the plaintiff").  Only after determining the date of the injury does a court then "determine whether the injury was immediately discoverable, or whether the accrual date will be postponed until it is reasonable to expect the plaintiff to discovery the injury."  *Graham*, 568 F.3d at 438 (applying the discovery rule).  Here, it is Defendant's affirmative burden—not Plaintiff's—to present support for its affirmative defense.  See, e.g., *Koszola v. Board of Educ. of City of Chicago,* 385 F.3d 1104, 1111 (7th Cir. 2004) (stating that "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events") (internal quotations omitted) (quoting *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003)).

---

[5]     Defendant also filed as supplemental authority the Supreme Court's recent decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962 (May 19, 2014), in which the Court held that laches did not bar a copyright infringement claim when the most recent act of infringement occurred within the limitations period. *Id.* at 1969 ("Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence.").  The Court applied the incident of injury rule to determine the date of accrual in addressing the laches question.  *Id.* at 1969 n. 4.  In a footnote, the Court noted that this standard was in conflict with the discovery rule followed by nine circuits.  *Id.*  But the Court specifically stated "we have not passed on the question." *Id.*  Furthermore, *Petrella* was a case about laches, and the holding is limited to that issue.  This Court cannot conclude that a comment in a footnote overrules the standard in nearly every circuit in the country, including the Seventh Circuit.  See *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (holding that "the copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights * * *.").  Accordingly, the discovery rule still applies to determine whether Plaintiff's claims are barred by the three-year statute of limitations.  See also *Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc.*, 2014 WL 2892504, at *11 (E.D. Pa. June 26, 2014).

Plaintiff alleges that Defendant infringed each photograph in each line of Exhibit 1 to the Kerr Declaration in any of three ways, depending on the limits in each license. Defendant's infringement of each photograph was done in a particular way, at a particular time. Defendant has not submitted evidence establishing when its infringements of Plaintiff's images began and ended. Therefore, Defendant's failure to prove when it infringed Plaintiff's images with respect to each claim involved in this motion prevents the Court from determining (1) if Defendant's infringements were timely under any circumstance, and (2) when Plaintiff knew or reasonably should have known of the underlying facts giving rise to each infringement. Much like Plaintiff has the burden to prove (i) ownership of a valid copyright and (ii) the infringer's unauthorized copying of protected elements of the copyrighted material, Defendant has the burden to prove that Plaintiff's claims are untimely, and it has failed to do so.

Instead of submitting evidence regarding when its infringements began and ended, Defendant claims that Plaintiff should have seen articles generally describing textbook publishers' copyright infringements of photographers' images and that such articles constitute "storm warnings" triggering a duty to investigate Defendant's use of his work. However, Defendant has not presented any evidence that Plaintiff saw any of these articles earlier than November 2009. Rather, in his deposition, Plaintiff specifically denied having any awareness of photographers' copyright litigation against textbook publishers prior to November 2009. Moreover, an article identifying an issue in the publishing industry generally did not obligate Plaintiff to go through 19 years of licenses to preserve his copyright infringement claims. If that were the expectation, then stock photo agencies and photographers likely would spend more

money monitoring their licenses than they receive from issuing licenses. Defendant is not entitled to summary judgment on its statute-of-limitations defense.[6]

## III.    Analysis of Defendant's Motion for Partial Summary Judgment

### A.    Fraud

Under Illinois law, a claim for fraud must include allegations of: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). "[I]n the context of common law fraud, the law presumes that transactions are fair and honest; fraud is not presumed." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005). Plaintiff "must prove all elements of actual fraud by clear and convincing evidence." *Wachovia Sec., LLC v. Neuhauser*, 528 F. Supp. 2d 834, 858 (N.D. Ill. 2007) (citation omitted); see also *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007) (affirming summary judgment and noting that generalized and circumstantial evidence is "insufficient to prevent summary judgment on an element of a claim, such as fraud * * *.").

Plaintiff's claims of fraud arise out of the transactions and conduct underlying a subset of his direct infringement claims. Plaintiff alleges generally that Defendant intentionally misrepresented its intended use of the image—whether through print run numbers, geographic

---

[6] Additionally, Defendant's argument that Plaintiff could have discovered print overruns is belied both by the industry's way of doing business and by Defendant's own actions. Plaintiff could not feasibly ascertain Defendant's actual uses of images unless Defendant itself provided that information. If Plaintiff found his photo in a licensed product, he would have no way of knowing whether that particular copy fell within the number of copies or other license parameters he granted Defendant. See, *e.g.*, *Design Basics, LLC v. Roersma & Wurn Builders, Inc*., 2012 WL 1830129, *2 (W.D. Mich. Apr. 23, 2012) ("If an infringement is initially remote, concealed or not subject to reasonable discovery by an unsuspecting copyright holder in his everyday routine, he should not lose his copyright protection unwittingly.").

distribution or format—in order to obtain a lower license fee from Plaintiff. Plaintiff further alleges that he relied on Defendant's implicit representations that it would not exceed the parameters in its invoice request letters.[7]

The first amended complaint alleges that Defendant misrepresented to Plaintiff "that its use of the Photographs would not exceed the limitations contained in Wiley's request letters" as well as the number of textbooks it would print, the geographic areas in which it would distribute the textbooks and the format in which it would reproduce the textbooks. In order for such future promises to be actionable, Plaintiff must show Defendant's fraudulent intent at the time of the promise itself. *Frerck v. John Wiley & Sons, Inc.*, 850 F. Supp. 2d 889, 898 (N.D. Ill. 2012) (plaintiff must show evidence of a "scheme * * * intended to induce the promisee to act for the promisor's benefit at the time of the promise.") (citations omitted). To satisfy the "high hurdle" for promissory fraud claims, the plaintiff must show "specific, objective manifestations of fraudulent intent." *Francis v. Bankcard Am., Inc.,* 1999 WL 1289110, at *8 (N.D. Ill. Jan. 4, 1999) (circumstantial evidence and inferences are not sufficient) (citations and internal marks omitted).

Plaintiff has not heeded this Court's instruction—set forth in denying Wiley's motion to dismiss Plaintiff's fraud claim—that he "must develop *evidence* of [Wiley's] intent to deceive and of a scheme to defraud." *Frerck*, 850 F. Supp. 2d at 898 (emphasis added). Rather than submit evidence of the specific intent of the particular Wiley employees who made the alleged misrepresentations, Plaintiff asserts that Defendant "had exclusive and specialized knowledge of

---

[7] Plaintiff has failed to allege the specific communications that constitute the allegedly fraudulent misrepresentations by Defendant with regard to the transactions identified in Rows 31, 35, and 36 of his claim chart, where those transactions involve invoices issued by The Stock Market, and Plaintiff has failed to plead or attach Defendant's communications with The Stock Market. In his response brief, Plaintiff does not dispute that he failed to make particularized allegations of fraud with respect to these claims, nor does he offer any evidence of the alleged misrepresentations. Therefore those claims are dismissed.

its own prior edition sales and new edition forecasts." Pl.'s Resp. at 4. This contention fails to establish Defendant's pre-existing fraudulent intent for several reasons.

First, Plaintiff fails to cite any evidence connecting the individual employees at Defendant (a global corporation with thousands of employees) who allegedly were aware of the prior edition sales with those particular photo editors who had the only dealings with Plaintiff that he contends were fraudulent. See, *e.g., Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 707 (7th Cir. 2008) (refusing to rely on collective corporate knowledge as the basis for a fraud claim – "[i]ntent to deceive is not a corporate attribute"); *Heathcote Holdings Corp. v. William K. Walthers, Inc.*, 779 F. Supp. 2d 735, 737-738 (N.D. Ill. 2011) (granting summary judgment for defendant where "no single corporate agent possessed the various pieces of information necessary to form the requisite deceptive intent). Despite repeated references to Wiley's "forecasts," Plaintiff does not cite any evidence of such information. Rather, the evidence before the Court is that Wiley employees believed the requests were accurate or at a minimum good-faith estimates. During her deposition, Hilary Newman, a photo editor at Wiley who negotiated some of the invoices at issue here, was asked whether she was aware that the sixth edition of *Dicho y Hecho* had sold more than 40,000 copies at the time that she requested the invoice for use of Plaintiff's images in the seventh edition. She responded that she did not. She further testified that she and others responsible for obtaining photos did not have access to actual sales and distribution information during the time period at issue. Moreover, the only evidence that Plaintiff does cite—a summary spreadsheet showing total sales and distribution data aggregated over an undefined period of time—fails to establish any inference that the sales and distribution of any prior edition had already exceeded the amounts that Defendant was

estimating for its next edition at the time that Defendant's photo editors requested the invoices for those next editions.

Plaintiff also cites invoice request letters from Defendant stating its estimates for the anticipated print runs, geographic distribution, and formats of a particular book as proof of a future intent to defraud him. Plaintiff acknowledges that "this alone does not prove fraud at the time of licensing," but argues that the extent of Defendant's alleged infringement "supports the inference that Wiley misled Frerck into agreeing to * * * lower fees." Pl.'s Resp. at 4. However, a later fact of infringement cannot on its own establish that Defendant, at that earlier moment of invoicing, had a then-present intention to exceed its usage estimates. The Seventh Circuit has held that such "broken promises" are not sufficient evidence of a party's fraudulent intent. See *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 413 (7th Cir. 2009) (defendant's failure to complete a written instrument, standing alone, did not establish defendant's intent not to fulfill its promise to complete the instrument); see also *Francis*, 1999 WL 1289110, at *8 (even a series of broken promises does not establish fraudulent intent).

In short, Plaintiff has failed to identify statements made by Defendant that it knew its actual uses would exceed the permission requested. In other words, Plaintiff has failed to marshal sufficient evidence of Defendant's fraudulent intent—that is, that Defendant intended by its misrepresentations to obtain access at a lower cost than it would have paid had Defendant been honest about its intended usage. "Broken promises, without more, are breaches of contract" and not fraud. See *Analysts Int'l Corp. v. Recycled Paper Prods., Inc.*, 1987 WL 18360, at *2 (N.D. Ill. Oct. 7, 1987). Plaintiff's allegations survived a motion to dismiss, but they do not suffice to stave off summary judgment.[8]

---

[8] Defendant also contends that Plaintiff cannot show independent injury resulting from the alleged fraud. See, *e.g., Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923 (7th Cir. 2003) (affirming dismissal of

## B.    Contributory and Vicarious Infringement

According to Plaintiff's first amended complaint, Plaintiff's claims for contributory and vicarious infringement arise out of Defendant's transactions with unidentified third parties who Defendant authorized to publish translations or adaptations of Wiley's textbooks for distribution outside of the United States.  To sustain a claim for contributory copyright infringement, the plaintiff must prove "(1) direct infringement by a primary infringer, (2) the defendant's knowledge of the infringement, and (3) the defendant's material contribution to the infringement." *Flava Works, Inc. v. Clavio*, 2012 WL 2459146, at * 2 (N.D. Ill. June 27, 2012) (citation omitted).  To sustain a claim for vicarious copyright infringement, the plaintiff must prove that "the defendant: (1) at all material times possessed the right and ability to supervise the infringing activity; and (2) has a direct financial interest in the infringer's activity," and "the plaintiff must also show the existence of the primary infringer." *Century Consultants, Ltd. v.*

---

fraud claims because the conduct underlying Plaintiff's claim for damages would result in an award of compensatory damages for fraud (and conversion) that was "identical to the damages that [plaintiff] seeks for copyright infringement, so that [plaintiff's] request for punitive damages is in fact a request for punitive damages for copyright infringement."); *Semerdjian v. McDougal Littell*, 2008 WL 110942, at *1-3 (S.D.N.Y. Jan. 2, 2008) (holding that the plaintiff had not alleged any harm independently arising from the misrepresentation: "Absent any infringement, [the publisher] would have reproduced only 40,000 copies of Plaintiff's copyrighted works, all in accordance with the contract terms. There would be no fraud related damages in such an instance, nor were any fraud related damages sustained prior to the alleged infringement."); *Cole v. John Wiley & Sons, Inc.,* 2012 WL 3133520, at *17 (S.D.N.Y. Aug. 1, 2012) (dismissing duplicative fraud claims because, among other things "there would have been no unauthorized uses of Plaintiff's works (and, hence, no injury to Plaintiff), had [Defendant] timely obtained the appropriate licenses and acted in accordance with the terms of each license. Therefore, but for [Defendant's] infringing conduct, Plaintiff would have suffered no harm from the alleged misrepresentations or concealment."); *Schneider v. Pearson Educ., Inc.*, 2013 WL 1386968, at *5 n.6 (S.D.N.Y. Apr. 5, 2013) (same); *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 623 (S.D.N.Y. 2013) (same).  Although the Court finds the reasoning in the cases cited by Defendant to be persuasive, the Court need not reach Defendant's alternative argument because Plaintiff has failed to come forward with sufficient evidence of Wiley's fraudulent intent to survive summary judgment. If Plaintiff had come forward with sufficient evidence at summary judgment that the Wiley employees negotiating with Plaintiff or his agents knew that they were underestimating the usage limits, the Court would look to the issue of damages.  But having failed to marshal sufficient evidence of Defendant's intent, the Court need not engage in that analysis.

*Miller Grp., Inc.*, 2008 WL 345541, at *8 n.22 (C.D. Ill. Feb. 7, 2008). Thus, both contributory

and vicarious copyright infringement require a showing of direct infringement by a third party.

"[T]he first step in assessing the existence of contributory infringement is determining the

existence of the underlying and direct infringing activity by a third party." *In re Aimster

Copyright Litig.*, 252 F. Supp. 2d 634, 648 (N.D. Ill. 2002), aff'd, 334 F.3d 643 (7th Cir. 2003);

see also *Microsoft Corp. v. Ram Distribution, LLC*, 625 F. Supp. 2d 674, 684 (E.D. Wis. 2008)

(granting summary judgment for plaintiff on contributory and vicarious infringement as to

individual defendant contingent upon the fact-finder's determination of direct infringement by

corporate defendant); *Monotype Imaging, Inc. v. Bitstream, Inc.*, 376 F. Supp. 2d 877, 884 (N.D.

Ill. 2005) (awarding judgment to defendant where plaintiff failed to establish direct infringement

at trial). Through the course of discovery in this action, Plaintiff has not sought or produced

sufficient evidence of direct infringement by third parties (that would give rise to secondary

liability on the part of Defendant) and therefore he cannot sustain his burden of proof on these

claims. Plaintiff bears the burden of proving all elements of his claims, and he has failed to

marshal evidence of direct infringement by third parties. Because Plaintiff has failed to show a

genuine issue of material fact as to the existence of direct infringement by a third party, Wiley is

entitled to summary judgment on Frerck's claims of contributory and vicarious infringement.[9]

### C.     Withdrawn Claims

Plaintiff agrees that Defendant's records demonstrate that Defendant did not exceed it

licenses with respect to print quantity limitations for the photographs listed in Rows 80, 93, 94,

---

[9] In his response brief, Plaintiff cites to documents showing distribution of textbooks by Defendant's subsidiaries as evidence of third party direct infringement. However, this "evidence" of direct infringement by third parties consists of documents previously submitted by Plaintiff to show direct infringement by Defendant. Plaintiff cannot have it both ways. If he intends to use these documents to show direct infringement (which he did), he cannot also use them to establish infringing activity by a third party.

95, 96, 261, and 263 of Exhibit A to the first amended complaint. He also concedes that Defendant did not improperly create electronic versions of the photographs listed in Rows 261 and 263. Thus, summary judgment will be entered in favor of Defendant and against Plaintiff on those theories of infringement with respect to those claims.[10]

Defendant has not moved for summary judgment on the aforementioned photographs relating to other license limits, such as geographic territory or unlicensed media use. Defendant argues that Plaintiff has not asserted infringement based on other theories, but a review of Exhibit A to the first amended complaint clearly indicates that he has. See Docket Entry 128-1. For instance, he has asserted a claim for the photographs at Rows 93-96 based on Defendant's use of the photographs in unlicensed media. Similarly, Row 263 includes a claim for "international distribution w/o license." Accordingly, those claims remain pending.

### D.  Infringement Claims Pertaining to *The Aztecs: People of America*

Plaintiff asserts infringement of his images licensed for use in three editions of *The Aztecs: People of America*. Defendant maintains that it did not publish any of these editions; instead, Defendant maintains that they were published first by Blackwell Publishers and later distributed by John Wiley & Sons Ltd., both of which were or are independent corporate entities that are not named in this action. In support of its position, Defendant points to record evidence

---

[10]  Plaintiff asks that his unsubstantiated claims be dismissed without prejudice. Plaintiff's request is inappropriate at this juncture. See *Campbell v. HSA Managed Care Sys., Inc*., 1997 WL 610043, at *1 n.1 (N.D. Ill. Sept. 25, 1997) (rejecting a plaintiff's request for voluntary dismissal of claims in response to a motion for summary judgment as "untimely" because plaintiff "cannot wait until h[is] response to the motion for summary judgment to withdraw claims," and noting that a plaintiff in circumstances such as here "cannot avoid adverse rulings by withdrawing claims at this juncture"). Allowing Plaintiff to withdraw his claims now—at the end of discovery and while Defendant's motion for summary judgment is pending—runs counter to the purpose of summary judgment and would unfairly prejudice Defendant. See *Joe v. Doe*, 2002 WL 32349380, at *1 (W.D. Wis. Oct. 31, 2002) ("a dismissal without prejudice would be unfair to defendants, who have invested time and resources in answering plaintiff's complaint, engaged in discovery and filed a summary judgment motion, brief and proposed findings of fact."). The Court rejects Plaintiff's attempt to "deprive the defendant of a ruling on the summary judgment motion by [his] dismissal tactic." *Pace v. S. Exp. Co*., 409 F.2d 331, 334 (7th Cir. 1969).

that establishes that the invoices that allegedly govern these images were not issued to Defendant; rather, the invoices indicate that the book was published by Blackwell Publishers.

Plaintiff agrees that Defendant's records show that it did not reproduce Plaintiff's photographs in *The Aztecs: People of America*, Third Edition. Accordingly, Plaintiff agrees that his claims against Defendant based on the use of his photographs in *The Aztecs: People of America*, Third Edition should be dismissed. However, he contends that issues of fact preclude summary judgment on his claims relating to the first and second editions of *The Aztecs: People of America*. Specifically, he contends that Defendant has not proven that it did not assume the liabilities of Blackwell when Defendant's subsidiary acquired the company.

Plaintiff misapprehends his burden of proof at summary judgment. The Seventh Circuit has been clear that "Federal Rule of Civil Procedure 56 imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary." *Modrowski,* 712 F.3d at 1168 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). "[T]he movant's initial burden 'may be discharged by showing—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* Defendant has done just that with respect to Plaintiff's photographs in *The Aztecs: People of America*. Now, Plaintiff, the nonmovant, must "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* Put another way, the nonmovant must "go beyond the pleadings ( *e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence 'upon which a jury could properly proceed to find a verdict' in [his] favor." *Id.* at 1169 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986)). Thus, Plaintiff must come forward with evidence that Defendant is liable for the unauthorized use of his image in *The Aztecs: People of America*. Or,

put another way, the burden is not on Defendant to disprove its responsibility for the acts of independent parties. Plaintiff has not met his burden to show any involvement with *The Aztecs: People of America* by the actual Defendant named in this case. Therefore, summary judgment will be entered on the claims based on all three editions (Rows 133-39 & 277-78 of Exhibit A to the first amended complaint).

## IV.    Conclusion

Consistent with the above, the Court grants in part and denies in part Plaintiff Robert Frerck's motion for partial summary judgment [154 and 155] and grants Defendant John Wiley and Son's partial motion for summary judgment [164]. The Court dismisses with prejudice Plaintiff Frerck's claims for fraud (Count II), contributory infringement (Count III), and vicarious infringement (Count IV). The Court also dismisses with prejudice the following claims for copyright infringement: (1) unlicensed digital use of the image in Row 49 of Exhibit 1 to the Kerr Declaration; (2) distribution of the image in Row 53 to an unlicensed geographic area; (3) print quantity limitations for the photographs listed in Rows 80, 93, 94, 95, 96, 261, and 263 of Exhibit A to the first amended complaint; (4) unlicensed digital use of the photographs listed in Rows 261 and 263; and (5) infringement of his images licensed for use in three editions of *The Aztecs: People of America*. The Court strongly urges the parties to contact Magistrate Judge Brown's chambers to schedule a settlement conference to attempt to resolve the remaining issues in this case, as offered by Magistrate Judge Brown just prior to briefing on the parties' summary judgment motions.

Dated:  July 14, 2014

_____
Robert M. Dow, Jr.
United States District Judge